HEALTH CALL OF DETROIT v ATRIUM HOME
& HEALTH CARE SERVICES, INC

Docket No. 244633. Submitted June 27, 2005, at Lansing. Decided
September 8, 2005, at 9:00 a.m.

Health Call of Detroit brought an action in the Wayne Circuit Court
against Atrium Home & Health Care Services, Inc., and three
licensed practical nurses, Katrina Johnson, Dwight Robinson, and
Damita Borner, alleging in part that Atrium tortiously interfered
with Health Call's at-will employment contract with Borner, that
Atrium and Borner tortiously interfered with Health Call's at-will
employment contracts with Johnson and Robinson, and that
Atrium and Borner tortiously interfered with Health Call's at-will
contract to provided home nursing care to an existing client and
with Health Call's business relationships and expectancies con-
cerning the client. The complaint also alleged that the nurses
breached the noncompetition clauses of their employment con-
tracts. The court, Robert J. Colombo, Jr., J., granted summary
disposition for Borner with regard to the claim of tortious inter-
ference with the home nursing care contract and summary dispo-
sition for the nurses with regard to the claim of breach of the
noncompetition clauses, concluding that the damages were specu-
lative because they were based on Health Call's loss of the at-will
contract to provide home nursing care. Health Call appealed. The
Court of Appeals, ZAHRA, P.J., and TALBOT and WILDER, JJ., reversed
and remanded for reinstatement of the dismissed claims. Because
it was required to follow the holding in *Environair, Inc v Steelcase,
Inc,* 190 Mich App 289 (1991), the Court further instructed that,
on remand, Health Call would be limited to the recovery of
nominal damages for those claims to the extent its damages were
caused by the loss of the at-will home nursing care contract. Had
it not been obligated to follow *Environair,* the Court would not
have limited recovery to nominal damages as a matter of law. 265
Mich App 79 (2005). The Court convened a special panel to resolve
the conflict between this case and *Environair*, and vacated part III
of its prior opinion in this case. 265 Mich App 801 (2005).

After consideration by the special panel, the Court of Appeals
*held:*

A blanket rule limiting recovery to nominal damages as a matter of law in all actions arising out of or related to the termination of at-will contracts is not legally sound. Factual scenarios may exist in which there is a tangible basis on which future damages may be assessed that are not overly speculative despite the at-will nature of the underlying contract. This case presents such a situation. Viewing the evidence in the light most favorable to Health Call, the evidence was sufficient to survive summary disposition. When damages can only be estimated or approximated, it is proper to place before the jury all the facts and circumstances tending to show the amount of damages. A reasonable trier of fact could find that, but for the alleged tortious interferences or breaches of contract, Health Call's client would have continued using Health Call to provide home nursing care because of the bond or relationships established. *Environair* is overruled to the extent that it limits recovery to nominal damages as a matter of law in all cases in which there is a request for damages arising out of or related to the termination of at-will contracts.

Reversed and remanded.

SAWYER, J., concurring in part and dissenting in part, concurred with the result and reasoning of the majority opinion, but wrote separately to express the view that the factual showing necessary to establish that damages are tangible rather than speculative in an at-will contract case is a high burden to meet. While it would likely be an exceptional case in which such a plaintiff will receive more than nominal damages, it is inappropriate to preclude plaintiffs as a matter of law from trying. He disagreed with the majority, however, that Health Call has necessarily made a sufficient showing to survive summary disposition, and would merely remand for the trial court to reconsider summary disposition without consideration of the *Environair* limitation.

WHITBECK, C.J., dissenting, would conclude that the reasoning in *Environair* remains sound, and would not overrule that case. Health Call's contract to provide nursing care was terminable at will, for any reason or for no reason at all. There is no certainty with respect to lost future profits under these circumstances, and no reasonable, or even approximate, basis for computing Health Call's lost future profits as a result of the termination of the home nursing care contract, even if there is a showing of tortious interference. The means suggested for measuring the lost profits also involve conjecture. Placing all the facts and circumstances surrounding the home nursing care contract before the jury would have no tendency to show the probable amount of lost profits, and would leave the jury with no recourse but pure speculation.

CONTRACTS — AT-WILL CONTRACTS — BREACH OF CONTRACTS — TORTIOUS INTER-
FERENCE WITH CONTRACTS — DAMAGES.

Recovery of damages in an action arising out of or related to the
termination of at-will contracts is not limited to nominal damages
as a matter of law if a tangible basis exists on which future
damages may be assessed that are not overly speculative despite
the at-will nature of the underlying contract.

*Hamood & Fergestrom* (by *Richard E. Shaw*) for the
plaintiff.

*Frank, Haron, Weiner and Navarro* (by *Sidney L.
Frank* and *Michael J. Hamblin*) for the defendants.

Before: WHITBECK, C.J., and SAWYER, MURPHY, NEFF,
JANSEN, FITZGERALD, and MARKEY, JJ.

MURPHY, J. Pursuant to MCR 7.215(J)(3), this special
panel was convened to resolve a conflict between this
Court's opinion in *Environair, Inc v Steelcase, Inc,* 190
Mich App 289; 475 NW2d 366 (1991), and the recently
issued opinion in *Health Call of Detroit v Atrium Home
& Health Care Services, Inc,* 265 Mich App 79; 695
NW2d 337 (2005), vacated in part 265 Mich App 801
(2005) (vacating part III of the opinion pursuant to
MCR 7.215[J][5]). In accordance with MCR 7.215(J)(1),
the prior *Health Call* panel indicated that it was re-
quired to follow the precedent of *Environair* in regard
to that panel's holding limiting recovery to nominal
damages for tortious interference claims arising from
the termination of an at-will contract unrelated to
employment. *Health Call, supra* at 84-85. Were it not
for MCR 7.215(J)(1) and the holding in *Environair,* the
*Health Call* panel would not have limited damages on
remand; thus, the panel invoked MCR 7.215(J)(2).
*Health Call, supra* at 80, 86-87. We conclude that a
blanket rule limiting recovery to nominal damages as a
matter of law in all actions arising out of or related to

the termination of at-will contracts is not legally sound, because there may exist factual scenarios in which there is a tangible basis on which future damages[1] may be assessed that are not overly speculative despite the at-will nature of the underlying contract. The case before us today presents such a situation when viewing the evidence in a light most favorable to plaintiff for purposes of summary disposition. Therefore, we resolve the conflict in favor of the analysis and reasoning in *Health Call*, and, to the extent that *Environair* is read as limiting recovery to nominal damages as a matter of law in all cases in which there is a request for damages arising out of or related to the termination of at-will contracts such as those involved here and in *Environair*, it is overruled. Accordingly, we reverse and remand to the trial court without limiting, as a matter of law, plaintiff's recovery to nominal damages.

Because the special order vacated only part III of the opinion in *Health Call*, parts I and II, which address the facts and principles of summary disposition, remain intact. For ease of reference and continuity, we shall incorporate parts I and II into this opinion by way of quotation and then proceed with our own independent analysis in part III.

I

   Plaintiff is a Michigan corporation that provides nursing and medical services for home care. Individual defendants, Katrina Johnson, Dwight Robinson, and Damita Borner, who are licensed practical nurses, entered at-will independent contractor agreements with plaintiff in which they agreed to provide home nursing services to plaintiff's

---

[1] For purposes of this opinion, reference to "future" damages pertains to alleged losses or damages accruing after the date on which the at-will contract was terminated.

clients. The defendant nurses' respective contracts contained a noncompetition clause, effective for two years following the termination of the independent contractor agreements. As relevant to the instant case, Wendy Williams, the mother of Cierra Harris, an infant, entered into an at-will contract with plaintiff for the provision of twenty-four hour home nursing services to Harris. The defendant nurses provided the contracted services to Harris under the independent contractor agreements between the defendant nurses and plaintiff.

Plaintiff alleges that defendant Atrium Home & Health Care Services, Inc. (Atrium), which was also in the business of providing home nursing care services, contacted defendant Borner and urged her to terminate her contract with plaintiff and persuade defendants Johnson and Robinson to also terminate their contracts with plaintiff, in order that Atrium could thereafter provide home nursing care services to Harris. Plaintiff further alleges that the defendant nurses terminated their respective independent contractor agreements with plaintiff, subsequently contracted with Atrium, and continued to provide home nursing care services to Harris after leaving plaintiff's employ and contracting with Atrium.

In its complaint, plaintiff alleged in count I that Atrium tortiously interfered with plaintiff's contract with Borner, that Borner and Atrium tortiously interfered with plaintiff's contracts with Johnson and Robinson, and that Borner and Atrium tortiously interfered with plaintiff's contract, business relationship, and expectancies with Williams concerning Harris. Count II alleged that the defendant nurses breached paragraph 12 of their respective contracts, which paragraph precluded solicitation of, or competition with, plaintiff's clients for two years after the expiration of their respective at-will agreements. Defendants moved for partial summary disposition pursuant to MCR 2.116(C)(10), asserting that plaintiff as a matter of law was limited to a recovery of nominal damages on its claims.

On count I, the trial court granted summary disposition in favor of Borner with regard to plaintiff's claim of

tortious interference with the Harris contract, but permitted the tortious interference claim to proceed against Atrium. Regarding count II, the trial court granted summary disposition in favor of the defendant nurses "to the extent" that "the damages [claimed by plaintiff] are measured by the loss of the [Harris] contract." The trial court determined that such damages were speculative because they were based on plaintiff's loss of an at-will contract to provide services to Harris. The parties stipulated the dismissal of all remaining claims without prejudice, and this appeal ensued. [*Health Call, supra* at 80-82.]

II

On appeal, a trial court's grant or denial of summary disposition is reviewed de novo. *First Pub Corp v Parfet*, 468 Mich 101, 104; 658 NW2d 477 (2003). This Court must review the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law. *Morales v Auto Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998). "A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 324; 675 NW2d 271 (2003). "When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id.* [*Id.* at 82-83.]

III

Before delving into the conflict issue, we shall address some preliminary or housekeeping matters. First, as noted in *Health Call, supra* at 80 n 1, plaintiff's complaint included a third count alleging breach of fiduciary duty that was dismissed in its entirety, but the dismissal is not challenged on appeal. Next, we wish to clarify and expand on the trial court's summary disposition ruling in this case. With respect to the tortious

interference count of the complaint, the court dismissed the claim involving Atrium and Borner as it related directly to the at-will contract between Williams and plaintiff concerning the in-home nursing care of infant Harris (the home nursing contract). The trial court would not permit possible recovery of even nominal damages. Additionally, on the tortious interference claim relative to the independent contractor agreements between plaintiff and defendant nurses, the trial court dismissed any prayer for damages in regard to Atrium and Borner that related to the loss of the home nursing contract. Once again, the court rejected a claim for even nominal damages because "nominal damages were never explained in [plaintiff's] answer or brief in opposition to the motion for summary disposition." The breach of contract claim against defendant nurses arising from the independent contractor agreements was limited by the court in that damages would not be permitted to be measured by plaintiff's loss of the home nursing contract. In sum, the trial court denied any claim for losses or damages associated with the home nursing contract because it was "a contract terminable at-will and the damages are speculative."

In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy. *Badiee v Brighton Area Schools,* 265 Mich App 343, 365-367; 695 NW2d 521 (2005); *Feaheny v Caldwell,* 175 Mich App 291, 301-303; 437 NW2d 358 (1989); M Civ JI 125.01 and 126.01.[2] The elements of

---

[2] In *Bonelli v Volkswagen of America, Inc,* 166 Mich App 483, 496 n 4; 421 NW2d 213 (1988), this Court acknowledged the distinction between the two torts:

The parties in this case at times seem to treat the torts of interference with an advantageous business relationship and in-

tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. *Badiee, supra* at 366-367; *Mahrle v Danke,* 216 Mich App 343, 350; 549 NW2d 56 (1996); *Jim-Bob, Inc v Mehling,* 178 Mich App 71, 95-96; 443 NW2d 451 (1989); see also M Civ JI 125.01 (adding the necessary damage element to the cause of action). The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Badiee, supra* at 365-366; *Mino v Clio School Dist,* 255 Mich App 60, 78; 661 NW2d 586 (2003); *Feaheny, supra* at 301; see also M Civ JI 126.01.

Here, plaintiff's tortious interference count, although entitled "Tortious Interference with Existing Contractual Relations," entails and blends both theories of tortious interference. Part of plaintiff's claim alleges that Atrium enticed nurse Borner into breaching her contract with plaintiff and that Atrium and Borner coerced the remaining defendants into breaching their contracts with plaintiff. Plaintiff also alleges that Atrium and Borner interfered with plaintiff's contract, business relationship, and expectancy with regard to Williams and Harris, but without any assertion that

terference with an existing contract as synonymous. These torts, however, are distinct. . . . Regarding the tort of interference with an advantageous relationship or expectancy, "an advantageous *contractual* relationship is sufficient, but not necessary, to state a cause of action." [Citation omitted; emphasis in original.]

Williams breached the at-will home nursing contract when she terminated plaintiff's services. Further, with respect to defendant nurses and their contractual relationships with plaintiff, the complaint alleges interference with the parties' business relationships and expectancies of continued employment. The tortious interference count of the complaint speaks generally of interference with contracts, business relationships, and expectancies. The second count of the complaint is a straightforward breach of contract claim and pertains only to defendant nurses. The issue of damages presented to us ultimately ties directly into the at-will home nursing contract and the loss of future profits under that contract, regardless of whether the underlying theory of liability is breach of contract, tortious interference with a contract, or tortious interference with a business relationship or expectancy.[3] Accordingly, the question is whether damages for future lost profits, beyond those deemed nominal, can flow from the termination of plaintiff's business relationship with Williams, which relationship was necessarily premised on the home nursing contract.

In *Feaheny, supra* at 302-304, this Court discussed at-will employment contracts in the context of tortious interference claims:

> The next question we must resolve is whether there can be interference with an employment contract that is terminable at will. We answer this question in the affirmative.
>
> At-will employment contracts have posed some analytical difficulties in tortious interference cases, particularly

---

[3] To the extent that plaintiff claims tortious interference with a contract, as opposed to interference with a business relationship or expectancy, against Atrium and Borner as it relates solely and directly to the home nursing contract, the claim cannot survive because there is no assertion that Williams *breached* the home nursing contract.

where an employee seeks damages caused by his discharge. When viewed under the tortious interference cause of action requiring a breach of contract, the courts have held that a discharge from employment is an insufficient basis upon which to establish the claim since no breach arises from the termination. On the other hand, when viewed as a subsisting relationship that is of value to the employee and will presumably continue in effect absent wrongful interference by a third party, the majority opinion in *Tash v Houston*, 74 Mich App 566, 569-570; 254 NW2d 579 (1977), . . . held that an at-will contract is the proper subject of an actionable tortious interference claim. Under this view, the employee has a manifest interest in the freedom of the employer to exercise his or her judgment without illegal interference or compulsion and it is the unjustified interference by third persons that is actionable. . . .

4 Restatement Torts, 2d, § 766, comment (g), pp 10-11, similarly takes the position that an at-will contract can be improperly interfered with, but that the fact that the contract is terminable at will makes it closely analogous to interference with prospective contractual relations claims and is a factor to be taken into account in determining damages. . . .

We agree with the rationale of the Restatement and *Tash* and, therefore, hold that an at-will employment contract is actionable under a tortious interference theory of liability. . . . Since we are here faced only with a question of defendants' liability, we express no view on what damages, if any, plaintiff could recover for tortious interference with the contract. We hold only that tortious interference with an at-will contract is actionable. The basis of our holding is that an at-will employee who enjoys the confidence of his or her employer has the right to expect that a third party will not wrongfully undermine the existing favorable relationship. [Citations omitted.]

Likewise, plaintiff here had a manifest interest and expectation in Williams's freedom and ability to exercise her judgment and continue the contractual busi-

ness relationship with plaintiff for the care of her infant without plaintiff and the relationship being undermined by defendants' wrongful interference. Of course, questions of wrongful interference and liability, which are not issues in this appeal, must be established. There is no dispute that tortious interference with an at-will contract is actionable and, if established, provides a basis to award damages in some form. This brings us to *Environair*.

In *Environair*, the plaintiff, Environair, Inc., represented manufacturers of various products and components for commercial buildings, and Greenheck Fan Corporation appointed the plaintiff as its exclusive sales agent pursuant to a written sales agreement. The agreement was terminable at will by either party following 30 days' notice. Subsequently, a dispute arose between Environair and the defendant, Steelcase, Inc., regarding the amount owing to Environair on a Steelcase construction project in which Environair was a subcontractor. Environair alleged that when it and Steelcase could not amicably resolve the dispute, Steelcase contacted Greenheck and successfully induced it to terminate the Greenheck-Environair sales agreement. Environair proceeded to file suit against Steelcase, alleging tortious interference with a business relationship, tortious interference with a contract, and an independent claim for exemplary damages. The trial court ruled that Environair could only recover nominal damages for any claim of damages accruing after the date the contract was terminated. *Environair, supra* at 290-291.

This Court affirmed, relying on *Sepanske v Bendix Corp*, 147 Mich App 819; 384 NW2d 54 (1985).

> In [*Sepanske*], the plaintiff was awarded damages for future lost earnings in an action for breach of a promise that he would be restored to either his former or a similar

position. While this Court agreed that a breach of contract claim had been established, it vacated the award of damages. The Court found that the plaintiff's expectation was that he would be restored to the same or similar at-will position, one which the employer was free to alter or terminate without consequence. The Court held that the jury's damage assessment in such a situation was purely speculative:

"There is no tangible basis upon which damages may be assessed where plaintiff's expectation was for an at-will position which could have been changed or from which he could have been terminated without consequence."

The case was remanded to the trial court for entry of judgment in favor of the plaintiff for nominal damages only. [*Environair, supra* at 293-294 (citations omitted).]

The *Environair* panel concluded that *Sepanske's* holding should apply equally to the loss of an at-will contract outside the context of an employment action:

While *Sepanske* involved an employment relationship, its holding regarding the speculative nature of damages is just as applicable to a nonemployment situation also involving an at-will contractual relationship. Just as the employment relationship in *Sepanske* could have been terminated at any time without consequence, thereby providing "no tangible basis upon which damages may be assessed," so could the exclusive sales contract between Environair and Greenheck. Thus, in the present case, we agree with the trial court that there could be "no tangible basis upon which damages may be assessed" that would be any less speculative. [*Environair, supra* at 294.]

This ruling was directed at Environair's tortious interference with a contract claim. *Id.* The Court noted that Environair had not specifically challenged the trial court's ruling with respect to this claim, but Environair had argued that *Sepanske* did not affect its claim for tortious interference with a business relationship or expectancy because the claim was not dependent on the

existence of a contract. *Id.* This Court, citing *Feaheny*, rejected the argument and held:

> [B]ecause the nature of the relationship between Environair and Greenheck was one founded upon a contract that was terminable at will, we conclude that there was no cognizable tortious interference cause of action independent of that contract, because Environair's mere subjective expectation of the continuation of the contract could not justify an expectation any greater.
>
> Therefore, we conclude that the trial court did not err in granting defendant's motion to limit damages. [*Environair, supra* at 295.]

As in *Environair,* plaintiff seeks future damages in the nature of lost profits for defendants' alleged improper role in facilitating Williams's termination of the at-will home nursing contract. The original *Health Call* panel opined that *"Environair* requires this Court to find that plaintiff could not recover more than nominal damages on its breach of contract and tortious interference claims, insofar as they pertain to the termination of the at-will contract to provide home nursing services to Harris." *Health Call, supra* at 84-85.[4]

---

[4] In its supplemental brief, plaintiff raises various points and arguments concerning *Environair* that demand only cursory consideration. Plaintiff argues that the ruling at issue in *Environair* is dictum because, as indicated above, Environair had not specifically challenged the trial court's ruling with respect to its tortious interference with a contract claim; therefore, there was no true conflict, and the *Health Call* panel was free to hold as it believed appropriate. Plaintiff also maintains that *Environair* is no longer good law following our Supreme Court's ruling in *Phillips v Butterball Farms Co, Inc (After Second Remand),* 448 Mich 239; 531 NW2d 144 (1995), which addressed an at-will employment contract, retaliatory discharge, future damages, *Sepanske,* and *Environair.* Plaintiff further contends that the *Environair* decision relative to nominal damages was fact-specific and not applicable as a matter of law to the facts presented in this case. Although arguably there may be merit to one or more of plaintiff's stances, this Court has already determined that a conflict exists that is outcome determinative and that requires

The general rule is that remote, contingent, and speculative damages cannot be recovered in Michigan in a tort action. *Sutter v Biggs,* 377 Mich 80, 86; 139 NW2d 684 (1966); *Ensink v Mecosta Co Gen Hosp,* 262 Mich App 518, 524; 687 NW2d 143 (2004). A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable. *Hofmann v Auto Club Ins Ass'n,* 211 Mich App 55, 108; 535 NW2d 529 (1995). Damages, however, are not speculative simply because they cannot be ascertained with mathematical precision. *Ensink, supra* at 525; *Hofmann, supra* at 108. Although the result may only be an approximation, it is sufficient if a reasonable basis for computation exists. *Ensink, supra* at 525. Moreover, the law will not demand that a plaintiff show a higher degree of certainty than the nature of the case permits. *Body Rustproofing, Inc v Michigan Bell Tel Co,* 149 Mich App 385, 390; 385 NW2d 797 (1986) (stating that lost profits are recoverable as damages on proper proof), citing *Allison v Chandler,* 11 Mich 542, 555 (1863). Thus, "when the nature of a case permits only an estimation of damages or a part of the damages with certainty, it is proper to place before the jury all the facts and circumstances which have a tendency to show their probable amount." *Body Rustproofing, supra* at 391. Furthermore, the certainty requirement is relaxed where damages have been established but the amount of damages remains an open question. *Bonelli v Volkswagen of America, Inc,* 166 Mich App 483, 511; 421

resolution by this special panel. 265 Mich App 801. To accept any one of plaintiff's arguments as valid would be to rule that there was no actual outcome-determinative conflict, and the law of the case precludes us from ruling contrary to the special order previously issued by this Court. See generally *Ashker v Ford Motor Co,* 245 Mich App 9, 13; 627 NW2d 1 (2001).

NW2d 213 (1988). Questions regarding what damages may be reasonably anticipated are issues better left to the trier of fact. *Wendt v Auto-Owners Ins Co,* 156 Mich App 19, 26; 401 NW2d 375 (1986).

After reciting similar principles concerning damages, the *Health Call* panel explained its disagreement in applying the *Environair* ruling regarding nominal damages:

> Here, plaintiff has alleged in count I that Atrium persuaded Borner to terminate her agreement with plaintiff and to begin working with Atrium, that Atrium and Borner together persuaded Johnson and Robinson to leave plaintiff's employ for Atrium, and that Atrium thereafter persuaded Williams to end her contract with plaintiff and to instead contract with Atrium for the provision of home nursing services to Harris. If the finder of fact were to conclude that Williams discontinued the contract with plaintiff and entered into the contract with Atrium only because she wanted the care provided by the defendant nurses to continue unabated, such a finding would support the conclusion that the termination of the home nursing services contract had no relation to the fact that the contract was at will. Under these circumstances, damages for the tortious interference by Atrium and Borner with the independent nursing contracts between plaintiff and the defendant nurses, and for interference by all defendants with the nursing services contract between plaintiff and Williams, would be neither speculative nor uncertain, as the time during which the defendant nurses continued to provide nursing services to Harris would operate as a basis for measuring damages. Similarly, should the factfinder conclude regarding count II that the defendant nurses had breached the noncompetition clause of their respective contracts by going to work for Atrium and that Williams terminated her contract with plaintiff and entered an agreement with Atrium only to secure continuity of care, damages might plausibly be measured on the basis of the continued provision of care for Harris by the defendant nurses. Therefore, were we not constrained by the

holding in *Environair*, we would find that plaintiff is not limited merely to the recovery of nominal damages for tortious interference with its independent [contractor] agreements with the defendant nurses or for breach by the defendant nurses of the noncompetition clause of the independent [contractor] agreements. [*Health Call, supra* at 85-86.]

Indeed, this case presents a unique factual situation in which the home nursing services provided to Williams and Harris by defendant nurses continued to be provided by those same nurses despite the change in the corporate entities servicing Williams and Harris. Within the four corners of the *Environair* opinion, there is no indication of such ongoing relationships or links. This, along with the fact that the Greenheck-Environair contract was subject to at-will termination, lent support to the Court's conclusion that there was no tangible basis on which damages could be assessed and thus any damage award would be unacceptably speculative. However, the *Health Call* panel chose not to distinguish the case from *Environair* on the basis of the facts. This raises a subject worthy of further inquiry bearing on the analytical framework of this opinion.

We must construe *Environair* as standing for the proposition that damages arising out of or related to the termination of an at-will contract are speculative as a matter of law in all cases because there is no tangible basis on which damages can be assessed. This interpretation is mandated as a result of the ruling in *Health Call* and the special order calling for conflict resolution. The *Health Call* panel found that factual circumstances exist that could reasonably support an award by the trier of fact of future damages that are not overly speculative or uncertain; therefore, plaintiff should not be limited to a recovery of nominal damages pursuant to the summary disposition ruling. *Health Call, supra*

at 85-86. But this Court found itself constrained by *Environair* to hold that only nominal damages are recoverable, essentially as a matter of law. *Id.* at 86. This holding necessarily reflected that the Court did not believe that it was at liberty to factually distinguish the case from *Environair* with respect to facts outside those establishing that an at-will contract was terminated upon which damages are sought. In other words, termination of an at-will contract allows, at best, only nominal damages. Future lost profits under the contract are not recoverable regardless of all the other surrounding circumstances. Therefore, the conflict that existed in the minds of the *Health Call* panel was that *Environair* permitted no more than nominal damages any time a party sought damages arising from or related to the termination of an at-will contract, while it, the *Health Call* panel, would allow more than nominal damages under the right factual conditions, present here according to the panel, despite the at-will nature of the underlying contract.

When this Court was polled under MCR 7.215(J) and voted that there was an outcome-determinative issue in conflict that required resolution by a special panel, the Court necessarily adopted the *Health Call* panel's assessment, implicit in part, that *Environair* controlled the outcome, that *Environair* set forth a blanket rule of only nominal damages, and that factual distinctions were irrelevant. If this were not the case, there would be no outcome-determinative conflict issue to resolve.[5] For example, if the facts present in our particular case do not warrant more than an award of nominal damages, it does not matter whether there is a blanket rule of nominal damages as opposed to a rule that requires

---

[5] "Special panels may be convened to consider outcome-determinative questions *only*." MCR 7.215(J)(3)(a) (emphasis added).

the issue of damages to be ascertained on a case-by-case basis; plaintiff loses. For this reason, and pursuant to principles regarding the law of the case doctrine, we are hesitant to explore whether the facts support a conclusion that future lost profits are speculative and uncertain. If we were to find that future damages were uncertain and speculative under the given facts, we would in fact be deciding that there did not actually exist an *outcome-determinative* conflict issue. Our directive is to resolve a legal conflict, not to reassess the facts. It appears to us that the conflict issue more properly and precisely stated is whether it is appropriate to limit recovery to nominal damages as a matter of law in all cases in which the damages sought arose out of or are related to the termination of an at-will contract. But, because we agree with the *Health Call* panel's assessment that the facts are sufficient to survive summary disposition and that more than nominal damages may be recoverable,[6] and because this case presents a sound basis for rejecting any rule of nominal damages only, we shall discuss the facts as they relate to the law of damages without fear of treading on the sanctity of the special order that convened this panel.

The evidence established a continuum of care by defendant nurses before, during, and after the termination of the home nursing contract; the only significant change as far as nursing care was the corporate entity supplying defendant nurses to Williams and Harris. Williams testified that she asked Atrium to keep the same nurses on the case. The question thus posed is whether this evidence is sufficient under principles governing summary disposition and MCR 2.116(C)(10)

---

[6] By agreeing with the *Health Call* panel that more than nominal damages might be recoverable under the facts, we are reinforcing the position that an outcome-determinative conflict issue exists.

to create an issue of fact on damages for future lost profits such that they are not overly speculative or uncertain. Viewing the evidence in a light most favorable to plaintiff, *Shepherd Montessori, supra* at 324, we find the evidence sufficient to survive summary disposition. Considering the continuum of care and Williams's apparent satisfaction with and reliance on defendant nurses, a reasonable trier of fact could find that, but for the alleged tortious interference by Atrium and Borner or the alleged breach of contract by defendant nurses, Williams would have continued using plaintiff pursuant to the contract beyond the date of actual termination because a bond or relationship had developed between Williams, Harris, and the nurses.

Indeed, in their brief on appeal, defendants acknowledged the close relationship between defendant nurses and Cierra Harris and Williams:

Cierra's mother also requested that the nurses continue providing Cierra with medical care, only through Atrium instead of Health Call.

The reason for this request was that from the time Cierra was discharged from the hospital and [placed] into her foster home until the time Health Call was terminated from her case, the Nurses provided Cierra with the necessary twenty-four (24) hour nursing care. As a result of providing such care to Cierra, the Nurses developed a deep understanding of her special needs and the skills required to respond to these special needs. Cierra responded very well to the care the Nurses provided to her. Although Cierra's mother was dissatisfied with Health Call, she and the foster mother were very happy with the care the three (3) Nurses provided to Cierra. [Citations to record deleted.]

Plaintiff had a manifest interest and expectation in Williams's freedom and ability to exercise her judgment and continue the contractual business relationship with plaintiff for her infant's care without having the rela-

tionship undermined by defendants' wrongful interference. The period beyond the date of termination during which defendant nurses continued to provide nursing care to Williams and Harris could reasonably serve as a measurement of damages with regard to lost profits, along with any other evidence eventually presented at trial that might support a damage award covering the same or a longer period. Recall that in *Environair,* the panel would not allow recovery of more than nominal damages accruing beyond the date of termination of the Greenheck-Environair contract. Although Williams testified in her deposition that she was unhappy with one of plaintiff's owners and that she would have made the change in service providers regardless of whether defendant nurses continued providing the care, evidence showing that Williams made a specific request that care be continued by defendant nurses and the fact that there was a continuum of care thereafter minimally created a factual issue on the subject, leaving resolution for trial. In light of the evidence, and considering the nature of this case and the need to estimate damages somewhat, "it is proper to place before the jury all the facts and circumstances which have a tendency to show" the amount of damages. *Body Rustproofing, supra* at 391. This case presents a clear example against a rule that only nominal damages are recoverable.

The dissent takes us to task, maintaining that we have established a rule "that in all actions arising out of or related to the termination of at-will contracts, juries will be allowed to speculate on the amount of future lost profits on the basis of *any* evidence that *might* support a damage award for such lost profits." *Post* at 109 (emphasis in original). We first note that our opinion specifically indicates that this case presents a *unique* factual situation, and we foresee that in other cases involving tortious interference with at-will contracts,

the plaintiffs may struggle to present evidence suffi-
cient to proceed to trial on the issue of future damages,
with nominal damages being the limit of any recovery.
We do think it would suffice if a plaintiff presents
documentary evidence in which the party who termi-
nated an at-will contract specifically indicates that it
was completely satisfied with the plaintiff's services
under the contract and would have continued the
contract indefinitely but for the wrongful interference.
It will likely be the rare case that parallels the factual
situation here. The dissent's position effectively per-
mits a party to tortiously interfere with at-will con-
tracts whenever the party pleases and in whatever
manner chosen without fear of financial repercussions.

The main thrust of the dissent is that our ruling will
require a jury to engage in speculation and baseless
conjecture because Williams could have terminated the
home nursing contract at any time for any reason, or
she may have continued the contract indefinitely;
therefore, it is impossible to ascertain the amount of
future lost profits with any certainty. We believe that
the dissent demands absolute or too much certainty and
seeks exactness; the law permits some level of uncer-
tainty to be resolved by the trier of fact in the context of
damage awards.

In *Merkur Steel Supply, Inc v Detroit,* 261 Mich App
116; 680 NW2d 485 (2004), the plaintiff tenant leased
property adjacent to the city's airport and sued the city
under a claim of inverse condemnation after it was
unable to expand its operations on the property because
of the city's actions relative to expanding airport opera-
tions. The plaintiff pointed to lost profits from the
inability to expand its business as part of valuing the
leasehold, and this Court stated, "Because we are
dealing with a business that has not come to fruition,

some degree of guesswork is necessary and the amount of damages cannot be established for certain." *Id.* at 136-137. In *Bonelli, supra* at 511, this Court noted that even if lost profits are difficult to calculate and speculative to some degree, they are still allowed as an item of loss. As early as 1863, our Supreme Court stated that "when, from the nature of the case, the amount of the damages can not be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." *Allison, supra* at 555-556.

In the context of damages in personal injury and wrongful death actions, there is inherent uncertainty regarding what the future may hold. In *Vink v House,* 336 Mich 292, 296-297; 57 NW2d 887 (1953), a personal injury case, the Michigan Supreme Court indicated that the measure of damages attributable to the loss of future earnings is left to the sound judgment of the jury despite the time element being uncertain, and the jury's award will not be disturbed if reasonable and within the range of the testimony and proofs presented. This principle was adopted and incorporated in *Henry v Detroit,* 234 Mich App 405; 594 NW2d 107 (1999), an action under the Whistleblowers' Protection Act, MCL 15.361 *et seq.* The *Henry* panel stated:

> In regard to the economic damage award, the only specific argument defendants make is that there were no guarantees plaintiff would have been employed until the age of seventy. Our Supreme Court has stated that the measure of damages for the loss of future earnings where the time element is uncertain is based on the sound judgment of the trier of fact and, if reasonable, will not be

disturbed. *Vink v House,* 336 Mich 292, 297; 57 NW2d 887 (1953). In the case at bar, plaintiff testified that he wanted to work until the age of seventy, and there was other testimony indicating that other members of the police department worked in excess of thirty-five years and attained the age of seventy. As a result, the trial testimony supports the economic damage award, which appears to be reasonable. [*Henry, supra* at 415-416.][7]

In *Reisman v Regents of Wayne State Univ,* 188 Mich App 526, 542; 470 NW2d 678 (1991), a case involving, in part, a claim under the Civil Rights Act, MCL 37.2101 *et seq.,* this Court stated that "[i]t is well established that, where the fact of liability is proven, difficulty in determining damages will not bar recovery." In *Phillips v Butterball Farms Co, Inc (After Second Remand),* 448 Mich 239, 253-254; 531 NW2d 144 (1995), our Supreme Court found that in employment tort cases involving at-will employment, a plaintiff can recover lost wages and is not limited to nominal damages despite the inherent speculation in assessing the amount of lost wages.

Here, the evidence of a continuum of care and Williams's desire to maintain the status quo with respect to the nurses providing care to her daughter constituted evidence that could support a jury finding that the home nursing contract with plaintiff would have remained intact beyond the date of termination and would not have been terminated on that date. Although there might be a need to speculate somewhat as to how long the contract would have continued in effect beyond the date of termination, or in other words

---

[7] In *Goins v Ford Motor Co,* 131 Mich App 185, 199; 347 NW2d 184 (1983), a wrongful discharge case in which the jury calculated damages using salary differences for the 40 years of the plaintiff's life expectancy, this Court found that "[t]o so calculate based upon relevant evidence was not improper or overly speculative."

*how much* in lost profits should be awarded, assuming liability, this issue is within the province of the jury and could be determined on the basis of a finding relative to the intensity of Williams's desire to maintain the existing nursing care and, more specifically, her desire to retain the services of defendant nurses. This finding could be coupled with facts regarding the periods in which defendant nurses continued to care for Harris after the switch in corporate entities, i.e., the date of termination of the home nursing contract, in order to ascertain the extent of lost profits.

The dissenting opinion utilizes hyperbole in its misinterpretation of our holding. We have simply held that a blanket rule limiting recovery to nominal damages as a matter of law in all actions arising out of or related to the termination of at-will contracts is not legally sound. The dissent concludes that we have not only "opened the door to jury speculation," we have "kick[ed] that door down entirely." *Post* at 123. With all due respect, it is the dissent that would have us bolt the door shut and, if we have opened the door, we have done so to allow in some fresh air. If one subscribes to the dissent's view regarding future damages as always being speculative when they relate to at-will employment contracts, one wonders whether the dissent would reverse case law that allows for more than nominal future damages for at-will employees whose employment is terminated in violation of various civil rights statutes or, for that matter, future damages for a wrongful death claim involving an at-will employee. Future damages for lost wages have traditionally been allowed in situations in which there is no dispute of fact that the injured party was an at-will employee. Simply because damages cannot be ascertained with mathematical certainty does not make them unacceptably speculative. It is for this

reason that what damages may reasonably be anticipated is an issue better left for the trier of fact.

We conclude that a blanket rule limiting recovery to nominal damages as a matter of law in all actions arising out of or related to the termination of at-will contracts is not legally sound. There may exist factual scenarios in which there is a tangible basis on which future damages may be assessed that is not overly speculative despite the at-will nature of the underlying contract. Indeed, this case presents such a situation when viewing the evidence in a light most favorable to plaintiff for purposes of summary disposition.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

NEFF, FITZGERALD, and MARKEY, JJ., concurred with MURPHY, J.

SAWYER, J. (*concurring in part and dissenting in part*). I concur with the result and reasoning contained in Judge MURPHY's opinion, especially its conclusion:

> We conclude that a blanket rule limiting recovery to nominal damages as a matter of law in all actions arising out of or related to the termination of at-will contracts is not legally sound. There may exist factual scenarios in which there is a tangible basis on which future damages may be assessed that is not overly speculative despite the at-will nature of the underlying contract. [*Ante* at 107.]

But I write separately to express my view that the factual showing necessary to establish that damages are tangible rather than speculative in an at-will contract case is a high burden to meet. Quite frankly, I am skeptical whether this, or any other, plaintiff can meet that burden. It would, I think, be an exceptional case in which the plaintiff will be able to survive summary

disposition and receive a jury verdict that does award more than nominal damages. But that said, I join with the majority in concluding that it is inappropriate to preclude plaintiffs as a matter of law from trying.

Therefore, to the extent that the trial court followed the lead of *Environair, Inc v Steelcase, Inc*[1] and granted summary disposition solely because this case involves an at-will contract, I agree that the trial court erred in so doing. I join with the majority in overruling *Environair* to the extent that it holds that, as a matter of law, damages in at-will contract cases are always speculative and, therefore, only nominal damages may be recovered in every case.

I do not, however, join with the majority in its conclusion that plaintiff in the case at bar has necessarily made a sufficient showing to survive summary disposition. I would merely remand to the trial court to reconsider summary disposition, but this time without the view that *Environair* creates an absolute rule barring more than nominal damages in such cases. The trial court in this, and every other such case, must assess the merits of each individual case to determine if the plaintiff in that case has made a sufficiently tangible showing of damages to warrant allowing the jury to consider an award of more than nominal damages. But I would allow the trial court to make the determination in the first instance.

WHITBECK, C.J. (*dissenting*). The majority today concludes that a blanket rule limiting recovery to nominal damages as a matter of law in all actions arising out of or related to the termination of at-will contracts is not "legally sound." The majority then gives us a new rule.

---

[1] 190 Mich App 289; 475 NW2d 366 (1991).

That rule is that in all actions arising out of or related to the termination of at-will contracts, juries will be allowed to speculate on the amount of future lost profits on the basis of *any* evidence that *might* support a damage award for such lost profits. I cannot imagine a surer or more certain invitation to baseless conjecture than such a rule, and I respectfully dissent.

### I. OVERVIEW

As the majority opinion states, this Court convened this special panel under MCR 7.215(J)(3) to resolve the conflict between the vacated portion of the prior opinion in this case and *Environair, Inc v Steelcase, Inc.*[1] In this case, the individual defendants, Katrina Johnson, Dwight Robinson, and Damita Borner (the nurse defendants), provided home nursing services for an infant, Cierra Harris, as independent contractors of plaintiff Health Call of Detroit (Health Call). The nurse defendants had independent contractor agreements with Health Call (the Nurse Independent Contractor Agreements)[2] that included noncompetition clauses. *The Nurse Independent Contractor Agreements were terminable at will by either party.*[3] Health Call had a contract with Cierra Harris's mother, Wendy Williams, for the

---

[1] *Environair, Inc v Steelcase, Inc*, 190 Mich App 289; 475 NW2d 366 (1991).

[2] The majority opinion refers to these contracts as the "independent contractor agreements."

[3] Health Call argued in its initial brief that paragraph 12 of the Nurse Independent Contractor Agreements, which contained the phrase that the covenant not to compete "shall endure for a period of two years (24 months) from expiration of this Agreement," meant that this paragraph was not terminable at will. This language does not obviate the fact that the Nurse Independent Contractor Agreements were at-will contracts, as evidenced by the language in paragraph 7 giving either party "the right to terminate the Agreement" with a 30-day written notice.

provision of nursing care (the Williams Care Contract)[4] to Cierra Harris. *The Williams Care Contract was also terminable at will by either party.*

According to Health Call, defendant Atrium Home & Health Call Services (Atrium) eventually contacted one of the nurses, which led to all the nurse defendants terminating their Nurse Independent Contractor Agreements with Health Call and then continuing to provide nursing services to Cierra Harris as agents of Atrium. Ms. Williams also terminated the Williams Care Contract. Following these terminations, Health Call sued.[5] The trial court granted partial summary disposition, but a panel of this Court reversed to allow Health Call's claims to be reinstated with instructions that, should Health Call prevail on these claims, it could recover no more than nominal damages to the extent its damages were caused by the loss of the Williams Care Contract.[6] However, the *Health Call* panel stated that, but for the decision in *Environair*, it would not have so

---

[4] The majority opinion refers to this contract as the "home nursing contract."

[5] In its count I, Health Call asserted claims of tortious interference with a contract against Atrium and one of the nurse defendants, Damita Borner. Specifically, Health Call asserted that (a) Atrium tortiously interfered with Health Call's Nurse Independent Contractor Agreement with Damita Borner, (b) Atrium and Damita Borner tortiously interfered with Health Call's Nurse Independent Contractor Agreements with Katrina Johnson and Dwight Robinson, and (c) Atrium and Damita Borner tortiously interfered with Health Call's Williams Care Contract and "business relationships and expectancies" concerning Cierra Harris. In its count II, Health Call brought breach of contract claims against the nurse defendants for allegedly breaching their Nurse Independent Contractor Agreements by violating their noncompetition agreements in connection with their continuing work for Cierra Harris as agents of Atrium.

[6] *Health Call of Detroit v Atrium Home & Health Care Services, Inc*, 265 Mich App 79; 695 NW2d 337 (2005), vacated in part 265 Mich App 801 (2005).

limited the damages on these claims on remand, thereby declaring a conflict under MCR 7.215(J)(2).

The majority of this special panel today resolves the conflict "in favor of the analysis and reasoning in *Health Call*" and overrules *Environair* "to the extent that [it] is read as limiting recovery to nominal damages as a matter of law in all cases in which there is a request for damages arising out of or related to the termination of at-will contracts . . . ."[7] I reach the polar opposite conclusion. I would therefore reaffirm this Court's decision in *Environair*, and I would retain the rule that limits recovery to nominal damages as a matter of law in all actions arising out of or related to the termination of at-will contracts.

## II. THE CASES, THE LAW, AND THE ISSUES

### A. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of summary disposition.[8] We must review the record in the same manner as the trial court to determine whether the movant was entitled to judgment as a matter of law.[9] "A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim."[10] When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party.[11]

---

[7] *Ante* at 86.

[8] *First Pub Corp v Parfet*, 468 Mich 101, 104; 658 NW2d 477 (2003).

[9] *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998).

[10] *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 324; 675 NW2d 271 (2003).

[11] *Id.*

B. *ENVIRONAIR*

*Environair* involved a claim of tortious interference with a business expectancy that arose when the defendant allegedly induced the termination of an exclusive sales agent agreement that was terminable at will.[12] The *Environair* panel considered *Sepanske v Bendix Corp*,[13] in which this Court had earlier held that only nominal damages were available for breach of a contract resulting in the loss of at-will employment because there was no tangible basis on which to assess damages. The *Environair* panel concluded that this holding regarding the speculative nature of damages applied equally to at-will contracts outside the employment context, noting that a party to an at-will contract may terminate it "at any time without consequence . . . ."[14] Thus, the *Environair* panel affirmed the trial court's limitation of damages for loss of the at-will sales contract to nominal damages.[15]

C. *HEALTH CALL*

The *Health Call* panel disagreed with the view that attempting to assess damages for the loss of an at-will contract is necessarily speculative.[16] While recognizing that it may be difficult to prove damages resulting from the termination of an at-will contract, the *Health Call* panel noted the established principle that " 'damages are not speculative merely because they cannot be ascertained with mathematical precision. It is sufficient if a reasonable basis for computation exists, although the

---

[12] *Environair, supra* at 290-291, 294-295.

[13] *Sepanske v Bendix Corp*, 147 Mich App 819, 828-829; 384 NW2d 54 (1985).

[14] *Environair, supra* at 294.

[15] *Id.* at 293-295.

[16] *Health Call, supra* at 85.

result be only approximate.' "[17] The *Health Call* panel
observed that an award of damages for the count I
tortious interference claims "would be neither specula-
tive nor uncertain, as the time during which the defen-
dant nurses continued to provide nursing services to
Harris would operate as a basis for measuring dam-
ages."[18] Similarly, the *Health Call* panel stated with
regard to the count II breach of contract claims that
"damages might plausibly be measured on the basis of
the continued provision of care" by the nurse defen-
dants.[19]

### D. DEFINING THE ISSUES

The *Health Call* panel stated that a plaintiff may
properly maintain an action for tortious interference
with an at-will employment contract[20] and that an
at-will employment contract may properly contain a
noncompetition clause.[21] I agree. I note, however, that
Health Call spent considerable effort in its initial brief
to the *Health Call* panel attempting to persuade that
panel that there is abundant authority that allows a
cause of action for interference with an at-will contract.
As mentioned above, the *Health Call* panel agreed,
although in cursory fashion, because it cited *Patillo*—a
case on which Health Call relied. More to the point,
however, Atrium did not seriously dispute the proposi-
tion that a plaintiff may sue for alleged tortious interfer-
ence with an at-will contract. Indeed, Atrium cited *Prysak*

---

[17] *Id.*, quoting *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 108;
535 NW2d 529 (1995).

[18] *Health Call, supra* at 86.

[19] *Id.*

[20] *Id.*83, citing *Patillo v Equitable Life Assurance Society of the United
States*, 199 Mich App 450, 457; 502 NW2d 696 (1993).

[21] *Health Call, supra* at 83, citing MCL 445.774a and *Thermatool Corp
v Borzym*, 227 Mich App 366, 372; 575 NW2d 334 (1998).

*v R L Polk Co*[22] for that exact proposition. Atrium's
point in its brief to the *Health Call* panel was that, even
if Health Call could bring such an action, under the
holding in *Environair* it could recover no more than
nominal damages.

Therefore, the issue here is not whether a plaintiff may
sue for alleged tortious interference with, or breach of, an
at-will contract. Rather, I understand the issue here to be
whether a plaintiff who brings a claim or claims for
tortious interference with, or breach of, an at-will contract
can recover more than nominal damages for future lost
profits. In the context of this case, I would break this issue
down further:

*First,* can Health Call recover more than nominal
damages for future lost profits resulting from the alleged
tortious interference (a) by Atrium with the Nurse Inde-
pendent Contractor Agreement with Damita Borner, (b)
by Atrium and Damita Borner with the Nurse Indepen-
dent Contractor Agreements with Katrina Johnson and
Dwight Robinson, and (c) by Atrium and Damita Borner
with the Williams Care Contract and with Health Call's
"business relationships and expectancies" concerning
Cierra Harris?

*Second,* can Health Call recover more than nominal
damages for future lost profits resulting from the alleged
breach by the nurse defendants of the noncompetition
provisions of the Nurse Independent Contractor Agree-
ments?

### III. DAMAGES FOR FUTURE LOST PROFITS RESULTING FROM ALLEGED TORTIOUS INTERFERENCE WITH AT-WILL CONTRACTS

#### A. ARTICULATING ATRIUM'S SYLLOGISM

Reduced to its essence, Atrium's position in this matter
is a syllogism:

---

[22] *Prysak v R L Polk Co*, 193 Mich App 1; 483 NW2d 629 (1992).

*Major Premise*: Damages based on mere speculation are not recoverable.

*Minor Premise*: Damages based on the termination of an at-will contract are speculative.

*Conclusion*: Therefore, damages based on the termination of an at-will contract are not recoverable.

There is no indication that the parties, the *Health Call* panel, or the majority here seriously disagree with the major premise. Indeed, as Atrium points out, it is black letter law in Michigan that damages may not be based on mere speculation.[23] Rather, the disagreement is with the minor premise. As the *Health Call* panel put it:

> [D]amages for the tortious interference by Atrium and Borner with the [Nurse Independent Contractor Agreements] between [Health Call] and the [nurse defendants], and for interference by all defendants with the [Williams Care Contract] between [Health Call] and Williams, would be neither speculative nor uncertain, as the time during which the [nurse defendants] continued to provide nursing services to Harris would operate as a basis for measuring damages. Similarly, should the fact-finder conclude regarding count II [breach of contract] that the [nurse defendants] had breached the noncompetition clause of their . respective [Nurse Independent Contractor Agreements] by going to work for Atrium and that Williams terminated her contract with [Health Call] and entered an agreement with

---

[23] See, for example, the cases that Atrium cites: *Woodyard v Barnett*, 335 Mich 352, 358-359; 56 NW2d 214 (1953) (remote, contingent, and speculative damages will not be considered); *Theisen v Knake*, 236 Mich App 249, 258; 599 NW2d 777 (recovery not permitted for remote, contingent, or speculative damages); *Hayes-Albion Corp v Kuberski*, 108 Mich App 642, 653; 311 NW2d 122 (1981) (damages may not be contingent, speculative, or uncertain), rev'd in part on other grounds, 421 Mich 170 (1984); *Indemnity Marine Assurance Co, Ltd v Lipin Robinson Warehouse Corp*, 99 Mich App 6, 14; 297 NW2d 846 (1980) (lost profits must be reasonably certain and not unduly speculative).

Atrium only to secure continuity of care, damages might plausibly be measured on the basis of the continued provision of care for Harris by the [nurse defendants].[24]

### B. FOCUSING THE ANALYSIS

Although neither Health Call nor the *Health Call* panel made this point explicitly,[25] it is reasonably clear that the recovery that Health Call seeks here is for future lost profits, that is, profits that Health Call will not receive after the date of the termination of the Williams Care Contract. Equally clearly, these future lost profits relate solely to the Williams Care Contract. Self-evidently, Health Call received no revenue from the Nurse Independent Contractor Agreements. Rather, under those contracts, Health Call *paid* the nurse defendants for the services that they rendered. Thus, there could be no revenue coming directly to Health Call from the Nurse Independent Contractor Agreements; the only revenue that Health Call received here came to it under the Williams Care Contract.

It is also reasonably clear that Health Call's claim against Atrium and Damita Borner for tortious interference with its "business relationships and expectancies" concerning Cierra Harris stands on the same basis as its claim against these defendants for tortious inter-

---

[24] *Health Call, supra* at 86.

[25] However, the majority here does. See, for example, the statement, *ante* at 91, that "[t]he issue of damages presented to us ultimately ties directly into the at-will home nursing contract *and the loss of future profits under that contract,* regardless of whether the underlying theory of liability is breach of contract, tortious interference with a contract, or tortious interference with a business relationship or expectancy." (Emphasis supplied.) See also the statement, *ante* at 95, that "[a]s in *Environair,* plaintiff seeks *future damages in the nature of lost profits* for defendants' alleged improper role in facilitating Williams's termination of the at-will home nursing contract." (Emphasis supplied.)

ference with the Williams Care Contract; that is, if damages for tortious interference with the Williams Care Contract are speculative, so too are damages for tortious interference with its "business relationships and expectancies" concerning Cierra Harris.

In short, the Williams Care Contract is the pivot on which all aspects of this case turn. Any future lost profits that Health Call might suffer derive solely from the termination of the Williams Care Contract. And if those future lost profits can be measured with reasonable certainty, then Health Call should be allowed to present its proofs on this issue to a jury. But if any measure of such future lost profits is merely speculative, then as a matter of law recovery of more than nominal damages cannot go before a jury *even if* there is a showing of tortious interference with the Williams Care Contract.

### C. MEASURING HEALTH CALL'S FUTURE LOST PROFITS

#### 1. HEALTH CALL'S METHODOLOGY

As Atrium points out, Health Call has attempted to quantify its future lost profits resulting from the termination of the Williams Care Contract. In count I of its complaint, it stated that the "business relationship and expectancies" between Cierra Harris and Health Call "had a reasonably likelihood of future economic benefit" for Health Call of $700,000. This amount was apparently calculated at $350,000 a year "with the expectation that said services would be provided for a period of two-years [sic]." In its answers to Atrium's interrogatories, Health Call again referred to "two year" contracts with the nurse defendants. In a deposition, one of the owners of Health Call, when asked where the amount of $700,000 came from, responded

that "[t]he billings based upon—the billings on the [Cierra Harris] case for two years would represent $700,000."

With all due respect to Health Call, its reasoning leads nowhere. The duration of the noncompetition provision in the Nurse Independent Contractor Agreements has nothing whatsoever to do with the loss of future profits that Health Call might suffer as a result of the termination of the Williams Care Contract. Assuming for the sake of this appeal that, as Health Call asserts, Atrium and Damita Borner tortiously interfered with the Williams Care Contract, and with Health Call's "business relationships and expectancies" concerning Cierra Harris, the fact that Borner promised in her Nurse Independent Contractor Agreement not to compete with Health Call for two years does not bear in any fashion on the issue of Health Call's loss of future profits from the Williams Care Contract. As in *Environair*, there is no cognizable tortious interference cause of action independent of the contract that is the source of all possible future revenues to the plaintiff— here, the Williams Care Contract.[26]

## 2. THE *HEALTH CALL* PANEL'S METHODOLOGY

The *Health Call* panel, without subscribing to Health Call's calculation of $700,000 in lost future profits, followed something of the same logic. The *Health Call* panel stated that "[i]f the finder of fact were to conclude that Williams discontinued the [Williams Care Contract] with [Health Call] and entered into the contract with Atrium only because she wanted the care provided by the [nurse defendants] to continue unabated, such a finding would support the conclusion that the termina-

---

[26] See *Environair, supra* at 295.

tion of the [Williams Care Contract] had no relation to the fact that the [Williams Care Contract] was at will."[27]

Here, in my view at least, the *Health Call* panel erroneously relied on the wrong factor: the motivation of Ms. Williams. Let us assume that the sole motivation of Ms. Williams in terminating the Williams Care Contract was to assure that the care the nurse defendants provided to Cierra Harris would continue unabated. Ms. Williams's reasons for terminating the Williams Care Contract were and are entirely irrelevant to the termination of that contract. The Williams Care Contract was at-will and could be terminated at any time *for any reason or for no reason at all*. Thus, any conclusion by a jury concerning Ms. Williams's motivation would have no bearing whatsoever on the issue of Health Call's future lost profits as a result of the termination of the Williams Care Contract.

If this is so, then the time during which the nurse defendants continued to provide nursing services to Cierra Harris cannot operate as a basis for measuring damages for much the same reason. Let us assume that, but for the allegedly tortious interference by Atrium and Damita Borner with the Williams Care Contract, Ms. Williams would have continued to use Health Call pursuant to that contract. Because that contract was at-will, there can be no reasonable basis on which a jury could determine how long that contractual relationship would continue. Ms. Williams could have terminated the Williams Care Contract the next day, the next month, or the next year, again for any reason or for no reason at all.

Moreover, I note that in her deposition, Ms. Williams stated that she was dissatisfied with the care from

---

[27] *Health Call, supra* at 85-86.

Health Call and that she was unhappy with one of the owners of Health Call because of his negative comments about her. It is certainly possible to conclude that this dissatisfaction might have led Ms. Williams to terminate the Williams Care Contract even had there been no allegedly tortious interference with that contract by Atrium and Damita Borner. But this conclusion would be entirely speculative. Similarly, it is entirely speculative—and entirely open-ended—to conclude that the time during which the nurse defendants continued to provide nursing services to Cierra Harris might serve as a basis for measuring damages. Under this formulation, Health Call's lost future profits could continue indefinitely and they would be, literally, without measure.

### 3. THE MAJORITY'S METHODOLOGY

The majority initially skirts the question of how a jury might reasonably go about measuring Health Call's lost future profits. Rather, the majority's opinion simply announces its conclusion that the "facts are sufficient to survive summary disposition" and that, therefore, "more than nominal damages may be recoverable . . . ."[28] The facts with which the majority begins its analysis relate to a "continuum of care by defendant nurses before, during, and after the termination of the home nursing contract[.]"[29]

Let us assume that there are facts of record that establish such a "continuum of care." Standing alone, these facts would merely establish that the nurse defendants provided medical care to Cierra Harris for a certain period. The majority then refers to "Williams's

[28] *Ante* at 100.
[29] *Ante* at 100.

apparent satisfaction with and reliance on defendant nurses . . . ."[30] Let us also assume that this was so. Standing alone, this additional fact also advances our analysis not at all. Indeed, I note that while Ms. Williams may have been satisfied with and relied on the nurse defendants, she stated that she was *dissatisfied* with the care from Health Call. In any event, and rather self-evidently, neither the fact that the nurse defendants provided medical care to Cierra Harris for a given time nor the fact that Ms. Williams was apparently satisfied with and relied on the nurse defendants constitutes evidence sufficient to survive summary disposition.

To reason its way past this dilemma, the majority turns to a "but for" analysis. In that analysis, the majority contrasts the nurse defendants' "continuum of care" and Ms. Williams's apparent satisfaction and reliance on the nurse defendants with Ms. Williams's decision to terminate the Williams Care Contract. "[A] reasonable trier of fact," the majority states, "could find that, but for the alleged tortious interferences by Atrium and Borner or the alleged breach of contract by defendant nurses, Williams would have continued using plaintiff pursuant to the contract beyond the date of actual termination because a bond or relationship had developed between Williams, Harris, and the nurses."[31]

Here we enter into the world of what might have happened or, more succinctly, of speculation. It *might* have happened that Ms. Williams *might* have chosen to continue her contractual relationship with Health Call indefinitely. It also *might* have happened that, because Ms. Williams was dissatisfied with Health Call, she *might* have terminated that contractual relationship

---

[30] *Ante* at 101.

[31] *Ante* at 101.

the next day, the next month, or the next year entirely because of that dissatisfaction . . . or, for that matter, entirely because of a passing whim. The blunt fact remains that Ms. Williams could terminate the Williams Care Contract at any time, for any reason, or for no reason at all. That the nurse defendants provided medical care to Cierra Harris for a particular period and that Ms. Williams was apparently satisfied with and relied on the nurse defendants do not alter in the slightest the fact that the Williams Care Contract was an at-will contract. In the end, the majority's "but for" analysis is itself simply an exercise in conjecture, divorced from the reality that we are here dealing with an at-will contract about whose duration there can be no reasonable certainty whatsoever.

To buttress its analysis, the majority gives us something of a head fake. Health Call, it asserts, "had a manifest interest and expectation in Williams's freedom and ability to exercise her judgment and continue the contractual business relationship with plaintiff for her infant's care without having the relationship undermined by defendants' wrongful interference."[32] But the issue in this case is not whether there is a sound intellectual basis for actions for tortious interference with contractual relations. And the issue is not whether Health Call has asserted facts concerning Atrium's alleged commission of that tort sufficient to survive summary disposition. Rather the issue is whether Health Call, when bringing an action for tortious interference with, or breach of, an at-will contract can recover more than nominal damages for future lost profits. Health Call's interest in the ability of Ms. Williams to exercise her judgment without being under-

[32] *Ante* at 101-102.

mined by defendants' alleged wrongful interference
with the Williams Care Contract has nothing whatso-
ever to do with that issue.

Ultimately, the majority does make its way to the
bottom-line question: How does one reasonably mea-
sure the loss of future profits following the termination
of an at-will contract? But the majority in essence
simply rearticulates the *Health Call* panel's methodol-
ogy. "The period," it states, "beyond the date of termi-
nation during which defendant nurses continued to
provide nursing care to Williams and Harris could
reasonably serve as a measurement of damages with
regard to lost profits, along with any other evidence
eventually presented at trial that might support a
damage award . . . ."[33]

First, as I noted in part III(C)(2), under this ap-
proach, Health Call's lost future profits could continue
indefinitely and would be quite literally without mea-
sure. Second, if in its earlier "but for" analysis the
majority opened the door to jury speculation, here it
kicks that door down entirely. After concluding that a
blanket rule limiting recovery to nominal damages as a
matter of law in all actions arising out of or related to
the termination of at-will contracts is not "legally
sound,"[34] the majority has given us a new rule. That
rule is that in all actions arising out of or related to the
termination of at-will contracts, juries will be allowed to
engage in unanchored conjecture regarding the amount
of future lost profits on the basis of *any* evidence that
*might* support a damage award for such lost profits.
There is a word for such conjecture, and that word is
speculation.

[33] *Ante* at 102.
[34] *Ante* at 86, 107.

### D. THE MAJORITY'S RESPONSE

The majority responds at some length to this dissent. Several of the points in this response are quite interesting. First, the majority places considerable emphasis on the uniqueness of the fact situation in this case, indicating that "plaintiffs may struggle to present evidence sufficient to proceed to trial on the issue of future damages," and that it will likely be the rare case that parallels the factual situation here.[35] Here the majority protests too much. Despite its disclaimers, the fact remains that the majority has concluded that a blanket rule limiting recovery to nominal damages as a matter of law in actions arising our of or related to the termination of at-will contracts "is not legally sound."[36] Moreover, I would be considerably more comfortable with the majority's positioning of this matter as an outlier case if there were some level of guidance to the trial bench and bar in the majority's opinion regarding the criteria that a trial judge should use to determine whether to utilize the *Environair* rule—which apparently remains generally applicable—or the exception to that rule that the majority creates in this case. Unfortunately, such guidance is, at least in my view, entirely lacking in the majority's opinion.

Second, the majority explicitly concedes that its approach invites jury speculation when it states that

> [a]lthough there might be a need to speculate somewhat as to how long the [Williams Care Contract] would have continued in effect beyond the date of termination, or in other words *how much* in lost profits should be awarded, assuming liability, this issue is within the province of the jury and could be determined on the basis of a finding relative to the intensity of Williams's desire to maintain

---

[35] *Ante* at 103.

[36] *Ante* at 86, 106-107.

the existing nursing care and, more specifically, her desire to maintain the services of defendant nurses.[37]

Pure speculation is, of course, not within the province of any jury. Moreover, the majority invites the jury in this case to speculate on the amount of the award for lost profits on the basis of its speculation about the "intensity" of Williams's desire to maintain the existing nursing care. I can only observe that compound speculation is not like compound interest; it does not get better with use.

Third, the majority responds to my hyperbole with some of its own. Rather than kicking down the door that bars jury speculation, the majority states that it has opened that door "to allow in some fresh air."[38] Setting aside the dueling metaphors, the fact remains that the majority's opinion states that the time during which defendant nurses continue to provide nursing care to Williams and Harris could reasonably serve as the measurement of damages with regard to lost profits, "along with any other evidence eventually presented at trial that might support a damage award covering the same or a longer period."[39] I assume that the majority intends that these words have some meaning. To me the meaning is clear: In the context of this case, *any* other evidence that *might* support a damage award—no matter how remote or conjectural—will be allowed to go before the jury. If there remains any bar to jury speculation in this case, I am at a loss to identify it.

Finally, the majority wonders whether I would "reverse case law that allows for more than nominal future damages for at-will employees whose employment is

---

[37] *Ante* at 105-106 (emphasis in the original).

[38] *Ante* at 106.

[39] *Ante* at 102.

terminated for violation of various civil rights statutes or, for that matter, future damages for a wrongful death claim involving an at-will employee."[40] It was, and remains, my understanding that we were deciding *this* case, not some other case. I understand the issue here to be whether a plaintiff who brings a claim or claims for tortious interference with, or breach of, an at-will contract can recover more than nominal damages for future lost profits. This dissent goes to the boundaries of that issue, and no further.

### E. CONCLUSION

I agree with the majority that damages are not speculative merely because they cannot be ascertained with mathematical precision,[41] and that it is sufficient if a reasonable basis for computation exists, although the result be only approximate.[42] I agree that the law does not require a higher degree of certainty than the nature of the case permits.[43] I agree that when the nature of the case permits only an estimation of damages or a part of the damages with certainty, it is proper to place before the jury all the facts and circumstances that have a reasonable tendency to show their probable amount.[44]

But here there is no reasonable, or even approximate, basis for computation of Health Call's lost future profits as a result of the termination of the Williams Care Contract. Indeed, there is no certainty at all with respect to such lost future profits. Under such a circum-

---

[40] *Ante* at 106.

[41] See *ante* at 96, citing *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 525; 687 NW2d 143 (2004), and *Hofmann, supra* at 108.

[42] See *ante* at 96, citing *Ensink, supra* at 525.

[43] See *ante* at 96, citing *Body Rustproofing, Inc v Michigan Bell Tel Co*, 149 Mich App 385, 390; 385 NW2d 797 (1986).

[44] See *ante* at 96, citing *Body Rustproofing, supra* at 391.

stance, placing all the facts and circumstances sur-
rounding the termination of the Williams Care Contract
before the jury could have no tendency to show the
probable amount of Health Call's lost future profits.
Rather, it would leave the jury with no recourse but to
pure speculation about a case that might have no end.

Therefore, I conclude that the reasoning in *Envi-
ronair*, a case decided over ten years ago, remains
sound, and I would decline to overrule that case. In my
view, under Health Call's methodology, under the
*Health Call* panel's methodology, or under the majori-
ty's methodology, there is no method by which Health
Call's future lost profits for the termination of the
Williams Care Contract can be reasonably computed or
even estimated. I submit that the majority, despite its
best efforts, has not refuted the logic of Atrium's
syllogism: damages for the termination of the Williams
Care Contract are not recoverable because such dam-
ages are inherently speculative.

Therefore, I would conclude that, as a matter of law,
Health Call can recover no more than nominal damages
for future lost profits resulting from (a) the alleged
tortious interference by Atrium with the Nurse Inde-
pendent Contractor Agreement with Damita Borner, (b)
the alleged tortious interference by Atrium and Damita
Borner with the Nurse Independent Contractor Agree-
ments with Katrina Johnson and Dwight Robinson, and
(c) the alleged tortious interference by Atrium and
Damita Borner with the Williams Care Contract and
with Health Call's "business relationships and expect-
ancies" concerning Cierra Harris.

### IV. DAMAGES FOR FUTURE LOST PROFITS RESULTING FROM BREACH OF CONTRACT

As I outlined in part III(B), there can be no future
lost profits to Health Call as a result of the nurse

defendants' alleged breach of the Nurse Independent Contractor Agreements because Health Call derived no profits from those agreements. Any damages for future lost profits that Health Call might suffer from the nurse defendants' breach of those agreements would be entirely derivative of the damages for future lost profits from the termination of the Williams Care Contract. I have argued in part III that such damages would be purely speculative. I do note, however, that Atrium concedes that a plaintiff might be able to recover any recruiting, hiring, or training costs or expenses incurred *before* an employee's breach of a noncompetition or nonsolicitation agreement.

For these reasons, I dissent.

JANSEN, J., concurred with WHITBECK, C.J.