*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SERENITY HOMES-NORTH, LLC, and
SERENITY HOMES-WEST, LLC,

UNPUBLISHED
August 20, 2019

Plaintiffs-Appellees,

v

Nos. 344757; 344781
Ottawa Circuit Court
LC No. 18-005231-CB

LYNNE DOYLE, COMMUNITY MENTAL
HEALTH OF OTTAWA COUNTY, and
LAKESHORE REGIONAL ENTITY,

Defendants,

and

JEFFREY L. BROWN,

Defendant-Appellant.

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant Jeffery L. Brown appeals as of right and by leave granted[1] the trial court's
order denying his motion for summary disposition pursuant to MCR 2.116(C)(7) (immunity
granted by law) and (8) (failure to state a claim). For the reasons set forth in this opinion, we
affirm.

## I. BACKGROUND

---

[1] *Serenity Homes-North, LLC v Doyle*, unpublished order of the Court of Appeals, entered
December 28, 2018 (Docket No. 344781).

-1-

This case arises from a fee dispute for services rendered by the plaintiffs Serenity Homes-North, LLC, and Serenity Homes-West, LLC, licensed adult foster-care facilities that provided foster care and other mental health services to developmentally disabled and mentally ill individuals and their families (the consumers). Abraham Joshua was the resident agent of both Serenity Homes-North and Serenity Homes-West. Defendant Community Mental Health of Ottawa County (CMHOC) was a program that was funded by federal and state tax funds that provided behavioral health services to vulnerable citizens with mental health issues. Defendant Lynne Doyle was the Executive Director and the Chief Executive and Administrative Officer of CMHOC. CMHOC placed individuals in plaintiffs' facilities pursuant to a written agreement and subsequent oral agreements. Plaintiffs alleged that CMHOC failed to pay plaintiffs from late 2016 through 2017 for previously rendered services and that CMHOC owed plaintiffs more than $35,000.

Defendant Lakeshore Regional Entity (LRE) was a Prepaid Inpatient Health Plan that was responsible for ensuring that Medicaid funding was available for entities to serve vulnerable individuals. LRE coordinated the management of Medicaid funding for several human service agencies including CMHOC and also had a quality assurance function regarding service providers. Defendant Brown was the Chief Executive Officer of LRE at the time of the occurrences that gave rise to this lawsuit.

Plaintiffs alleged that despite their provision of services to persons placed at their facilities by CMHOC, their invoices for services were not paid. Plaintiffs asserted that they met with LRE director Brown in August and September 2017 in an effort to facilitate payment. It was during this time that plaintiffs alleged Brown told them, "he would take care of it", referring to the outstanding billings. In November 2017, plaintiffs filed a formal provider grievance with LRE regarding the outstanding bills. The principals of the plaintiffs and the defendants engaged in discussions through the balance of 2017. At one meeting, the plaintiffs alleged that the CMHOC executive made defamatory remarks. In January 2018, plaintiffs filed the instant lawsuit. The complaint pled both a written and oral contract claims as well as unjust enrichment and account stated claims. Additionally, tortious interference and civil conspiracy claims were pled against all defendants. Claims against the individual defendants were also filed. Plaintiffs accused Brown of fraud and lodged a defamation claim against Doyle.

Motions for summary disposition were filed, most of which are not at issue in this appeal. Defendant Brown denied all allegations against him and asserted various affirmative defenses. Brown moved for summary disposition under MCR 2.116(C)(7) and (8). Plaintiffs responded and opposed Brown's motions for summary disposition. The trial court denied his motion finding that Brown was neither cloaked in absolute governmental immunity or qualified immunity. This appeal ensued.

## II. MCR 2.116(C)(7)

Brown first argues on appeal that the trial court erroneously determined that he was not entitled to absolute governmental immunity while the court found that he was the highest ranking official of LRE. He argues that his former employer LRE is a "level of government." We disagree.

This Court reviews de novo the trial court's grant or denial of a motion for summary disposition. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). Additionally, the applicability of governmental immunity is a question of law that this Court reviews do novo. *County Rd Ass'n of Mich v Governor*, 287 Mich App 95, 117-118; 782 NW2d 784 (2010). "In making this determination, this Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

MCR 2.116(C)(7) permits summary disposition if the claim is barred by immunity. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). The movant may support the motion for summary disposition under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(2). The trial court shall consider such evidence if the substance of the evidence would be admissible at trial. MCR 2.116(G)(6); *Odom*, 482 Mich at 466. Additionally, "[t]he contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden*, 461 Mich at 119.

The governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, grants absolute immunity to high-ranking government officials. *Odom*, 482 Mich at 468-469. MCL 691.1407(5) provides: "A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Judges, legislators, and the highest executive officials at all levels of government receive immunity from all tort liability for acts done within the scope of their judicial, legislative, or executive authority. *Odom*, 482 Mich at 468.

The purpose of the protection of absolute immunity is to shield public employees who engage in broad, essential governmental decision-making and to permit the officials to fulfill their public duties. *Grahovac v Munising Twp*, 263 Mich App 589, 595; 689 NW2d 498 (2004). An executive official may be entitled to absolute immunity if he or she has broad-based jurisdiction or extensive decision-making authority. *Id*. at 593. In order to determine whether a governmental entity is a "level of government," courts "examine whether the entity shares aspects of governance with other political subdivisions, such as the power to levy taxes, the power to make decisions having a wide effect on members of the community, or the power of eminent domain" and whether the governmental entity has policy-making powers. *Id*. at 593, 595-596.

LRE is a regional entity established under the Mental Health Code. MCL 330.1204b establishes the requirements and procedures for establishing a regional entity under the Mental Health Code, MCL 330.1001 *et seq*. MCL 330.1204b(1) provides that "[a] combination of community mental health organizations or authorities may establish a regional entity by adopting bylaws that satisfy the requirements of this section." The regional entity's bylaws must contain the purposes and powers of the regional entity, the manner in which a community mental health services program participates in governing the regional entity, the manner in which the regional entity's assets and liabilities are allocated to each participating community mental health services program, and the manner in which the regional entity enters into contracts, among other provisions. See MCL 330.1204b(1)(a), (b), (c), and (f). Additionally, "[a] regional entity

established under this section is a public governmental entity separate from the county, authority, or organization that establishes it." MCL 330.1204b(3).

In this case, the parties do not dispute that Brown was the highest ranking official of LRE, and the lower court record supports this conclusion. Brown was the Chief Executive Officer of LRE, and exercised broad-based jurisdiction and had extensive authority over LRE.

LRE was formed as a regional entity pursuant to MCL 330.1204b, and the purpose of LRE was to carry out the provisions of the Mental Health Code by coordinating and furthering the statutory purposes of the entities that established LRE. As the statute plainly reads, LRE is a "governmental entity". However, applying the *Grahovac* factors, it is not a "level of government" under MCL 691.1407(5). Brown did not present any evidence that LRE had the power to levy taxes, to make decisions that had a wide effect on members of the community, or had the power of eminent domain. LRE's authority and jurisdiction regarding issues related to mental health, developmental disability, and substance use disorder services was limited rather than broad-based jurisdiction or extensive authority similar to a judge or legislator. Therefore, LRE did not have aspects of governance or have the statutory authority to make policy decisions. See *Grahovac*, 263 Mich App at 593, 595-596.

Further, Brown did not present any evidence that LRE had autonomous authority beyond its statutory purposes and powers or beyond the powers conferred on it by the organizing entities. Although LRE had the powers provided in MCL 330.1204b(2), including the powers shared by the organizing entities, the power to contract with the state and the organizing entities, and the power to accept funds, LRE's authority was limited by the organizing entities. There was no evidence presented of other authorities, such as a city charter or city code that granted LRE autonomous authority or additional powers. Cf. *Davis v Detroit*, 269 Mich App 376, 380-381; 711 NW2d 462 (2005). Although LRE had the power to fulfill its purposes pursuant to MCL 330.1204b(2) and its bylaws, it did not have the power to make decisions beyond its statutory powers and those established by the organizing entities in LRE's bylaws. Therefore, we conclude that LRE was not an autonomous governmental unit. Notwithstanding Brown's role as the highest executive officer of LRE, the trial court did not err by determining that Brown was not entitled to absolute immunity under to MCL 691.1407(5) because LRE was not a level of government. See *Maiden*, 461 Mich at 119; *Grahovac*, 263 Mich App at 597.

Brown next argues that the trial court erroneously determined that he was not entitled to qualified governmental immunity. We disagree.

The *Odom* Court articulated the test for determining whether an individual has governmental immunity:

-4-

> If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test[2] by showing the following:
>
> > (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
> >
> > (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> >
> > (c) the acts were discretionary, as opposed to ministerial. [*Odom*, 482 Mich at 479-480.]

Pursuant to *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 633-634; 363 NW2d 641 (1984), a governmental employee must establish that he or she acted within the scope of his or her employment in order to be immune from intentional tort claims. *Odom*, 482 Mich at 473. This includes actions that the governmental employee reasonably believed that he or she was authorized to take. *Id*. Additionally, a government employee's actions must not have been malicious or executed with a wanton or reckless disregard of the rights or harm to another. *Id*. at 474-475. Finally, immunity applies to discretionary as opposed to ministerial actions. *Id*. at 475-476.

Plaintiffs asserted intentional tort claims of fraud and tortious interference with business relations. See *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 90; 706 NW2d 843 (2005); *Huron Tool and Engineering Co v Precision Consulting Servs, Inc*, 209 Mich App 365, 370-371; 532 NW2d 541 (1995); see also *Odom*, 482 Mich at 480. Plaintiffs' civil conspiracy claim required plaintiffs to establish the underlying intentional tort claims. See *Urbain v Beierling*, 301 Mich App 114, 132; 835 NW2d 455 (2013). Brown had the burden to prove that he was entitled to qualified governmental immunity pursuant to the *Ross* test. *Odom*, 482 Mich at 479-480.

The parties do not dispute that Brown interacted with plaintiffs in the course of his employment and within the scope of his authority as Chief Executive Officer of LRE. The parties also do not dispute that Brown's statement to plaintiffs that he would take care of the outstanding invoices was discretionary. The lower court record supports these conclusions. Plaintiffs alleged that Joshua met with Brown during the course of his employment as Chief Executive Officer of LRE to discuss the lack of payment for services that plaintiffs provided to consumers. Additionally, Brown's statement to Joshua that he would take care of the unpaid invoices required Brown to exercise judgment to resolve a problem and was not merely the performance of a duty. See *Odom*, 482 Mich at 473, 476.

---

[2] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 633-634; 363 NW2d 641 (1984).

Plaintiffs pleaded that Brown acted with malice or with wanton or reckless disregard of plaintiffs' right to be compensated for fulfilling their contractual obligations and disregard of the risk of harm that plaintiffs would incur additional expenses. Brown did not present any evidence to contradict plaintiffs' allegation that he did not act in good faith, other than generally denying the allegations against him.

In contrast, plaintiffs alleged that Brown wrongfully refused to pay the outstanding invoices. They also pled that Doyle, CMHOC, and LRE acted, in part, in an effort to conceal their organizational and personal malfeasance, difficulties with state authorities and loss of funding. Plaintiffs also alleged that Brown acted with malice or reckless disregard for plaintiffs' right to be compensated because defendant knew that he was powerless to effectuate the invoices' payment but indicated to Joshua that he would take care of the outstanding invoices. Plaintiffs alleged that Brown intended for plaintiffs to continue to provide services, plaintiffs relied on Brown's misrepresentation and continued to provide services, and plaintiffs suffered damages caused by Brown's misrepresentation. Regarding the tortious interference claim, plaintiffs alleged that Brown was aware of plaintiffs' business relationships with their consumers and that Brown's misrepresentation was the cause of injuries and damages to plaintiffs. Finally, plaintiffs alleged that Brown acted in concert with Doyle, CMHOC, and LRE to deprive plaintiffs of their ability to provide services to their consumers and to deprive plaintiffs of their payment for previously rendered services and that they suffered damages.

Accepting these uncontradicted allegations as true, plaintiffs sufficiently pleaded that Brown acted with malice or with a wanton or reckless disregard of the rights or harm to plaintiffs. See *Odom*, 482 Mich at 474-475; *Maiden*, 461 Mich at 119. Therefore, Brown was not entitled to qualified governmental immunity pursuant to MCL 691.1407(5) or summary disposition pursuant to MCR 2.116(C)(7). See *Odom*, 482 Mich at 479-480. Because plaintiffs pleaded sufficient facts regarding their civil conspiracy claim and their underlying intentional tort claims, as we will further discuss, the trial court did not erroneously deny Brown summary disposition under MCR 2.116(C)(7) regarding each of plaintiffs' claims. See *Odom*, 482 Mich at 479-480; *Maiden*, 461 Mich at 119.

### III.  MCR 2.116(C)(8)

Brown also argues that the trial court erroneously determined that plaintiffs alleged sufficient facts to support the elements of their fraud, tortious interference with business relations, and civil conspiracy claims against Brown. We disagree.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and the pleadings. *Bailey*, 494 Mich at 603. "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012). However, a plaintiff's conclusory statements that are unsupported by allegations of fact will not suffice to state a cause of action. *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395-396; 516 NW2d 498 (1994). In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(8), a trial court considers only the pleadings. MCR 2.116(G)(5).

Summary disposition is properly granted when the alleged claims are "so clearly unenforceable as a matter of law and no factual development could possibly justify recovery." *Johnson*, 491 Mich at 435 (quotation marks and citation omitted). Summary disposition may be premature if it is granted before discovery on a disputed issue is complete. *Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000). "However, summary disposition may be proper before discovery is complete where further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion." *Id*. (quotation marks and citation omitted).

Fraud is an intentional tort claim. *Huron*, 209 Mich App at 370-371. In order to establish a claim of fraud,

> [A] plaintiff must prove that (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew that it was false when it was made, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff acted in reliance on it, and (6) the plaintiff suffered injury because of that reliance. [*Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 38-39; 761 NW2d 151 (2008)].

The plaintiff's reliance must be reasonable. *Id*. at 39. However, a plaintiff is not able to establish a fraud claim if he or she had the means to determine that a representation was not true. *Id*. at 38.

In this case, plaintiffs stated a fraud claim against Brown on which relief could be granted. Plaintiffs alleged that Brown made a material representation that he would take care of the payment of plaintiffs' outstanding invoices. Plaintiffs further alleged that Brown knew that this representation was false because Brown knew that he was powerless to effectuate payment or that he simply would not effectuate payment. In support of the former, they have asserted that at the time the representations were made Brown was aware that LRE and CMHOC had suffered a loss of funding from the state and were in jeopardy of further losses. Additionally, plaintiffs alleged that Brown indicated that he would effectuate payment of the invoices with the intent that plaintiffs would continue to provide services and refrain from seeking legal remedies for the outstanding invoices. Finally, plaintiffs alleged that they relied on Brown's statement, continued to provide services, and suffered an injury by incurring expenses for additional uncompensated services rendered after Brown stated that he would effectuate payment of the outstanding invoices. Therefore, plaintiffs alleged each of the six elements of fraud in their amended complaint. See *Zaremba*, 280 Mich App at 38-39.

Regarding the reliance element, plaintiffs alleged that they continued to provide services in reliance on Brown's statement that he could effectuate CMHOC's payment of the outstanding invoices. Although Brown was the Chief Executive Officer of LRE, and was not an employee of CMHOC, plaintiffs alleged that LRE ensured that Medicaid funding was available to CMHOC and certified that programs, such as CMHOC, were in substantial compliance with the applicable standards for community mental health services programs. Accepting plaintiffs' factual allegations as true, plaintiffs' reliance on Brown's statement was reasonable based on Brown's role as Chief Executive Officer of LRE and LRE's role of ensuring that funding was available to

CMHOC and ensuring that CMHOC complied with the applicable program standards. Plaintiffs also sufficiently alleged that, when Brown made the statement that he would effectuate payment, he did not intend to perform the promise because Brown knew that CMHOC was not in substantial compliance with program standards and he was powerless to effectuate payment or that he would not effectuate payment. Therefore, we conclude that plaintiffs sufficiently alleged facts to support the elements of their fraud claim against Brown, and the trial court properly denied defendant's motion for summary disposition regarding plaintiffs' fraud claim pursuant to MCR 2.116(C)(8). See *Bailey*, 494 Mich at 603, 618; *Zaremba*, 280 Mich App at 38-39.

In order for a plaintiff to establish a claim of tortious interference with a business relationship or expectancy, a plaintiff must prove:

> (1) [T]he existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. [*Health Call*, 268 Mich App at 90].

Tortious interference with business relations claims can involve inducing a party to terminate an employment contract, interfering with a party's business relationships and expectancies of continued employment, or a reasonable likelihood of an award of a public contract or a sale of property. See *id*. at 90-91; *Cedroni Ass'n, Inc v Tomblinson, Harburn Assocs, Architects & Planners, Inc*, 492 Mich 40, 45-46; 821 NW2d 1 (2012).

In this case, plaintiffs stated a tortious interference with business relations claim against Brown on which relief could be granted. Plaintiffs pleaded that they had valid business relationships with their consumers and that they have a valid business expectancy to be paid for their services pursuant to oral and written agreements with CMHOC. Plaintiffs also pleaded that Brown had knowledge of plaintiffs' business relationships and that CMHOC owed plaintiffs more than $35,000 for previously rendered services, as demonstrated by Brown's meeting with Joshua to discuss CMHOC's failure to pay plaintiffs. Plaintiffs alleged that Brown interfered with plaintiffs' expectancy to receive payment for plaintiffs' previously rendered services by falsely stating that he would effectuate payment of the outstanding invoices, which caused plaintiffs to incur expenses for additional uncompensated services and to refrain from seeking repayment of the outstanding invoices and other legal remedies from CMHOC. Accepting plaintiffs' factual allegations as true, plaintiffs sufficiently alleged facts to support the elements of their tortious interference with business relations claim against Brown, and the trial court properly denied Brown's motion for summary disposition regarding this claim pursuant to MCR 2.116(C)(8). See *Bailey*, 494 Mich at 603, 618; *Health Call*, 268 Mich App at 90-91.

A plaintiff must establish an underlying tort in order to establish a claim of civil conspiracy. *Urbain*, 301 Mich App at 132; *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005). "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means."

*Advocacy Org*, 257 Mich App at 384 (quotation marks and citation omitted). If a plaintiff fails to establish an actionable tort, the plaintiff also fails to establish his or her civil conspiracy claim. *Id*. at 384-385.

In this case, plaintiffs stated a civil conspiracy claim against Brown on which relief could be granted. As noted, the plaintiffs pleaded sufficient factual allegations to support their tortious interference with business relations claims. They alleged that Brown, Doyle, CMHOC, and LRE acted in concert to commit that tort. Plaintiffs also alleged that they suffered damages, including economic injury, harm to their business reputation, and loss of business opportunities.

Plaintiffs sufficiently pleaded that Brown acted with Doyle, CMHOC, and LRE to accomplish the unlawful purpose of depriving plaintiffs of the rights and payment owed to them pursuant to their contractual agreements for the previously rendered services. Plaintiffs also sufficiently alleged that Brown used unlawful means, including Brown's alleged fraudulent statement and tortious interference with business relations, to deprive plaintiffs of their contractual rights and the payment for the previous rendered services. Therefore, we conclude that plaintiffs sufficiently alleged facts to support the elements of their civil conspiracy claim against Brown, and the trial court properly denied Brown's motion for summary disposition regarding plaintiffs' civil conspiracy claim pursuant to MCR 2.116(C)(8). See *Bailey*, 494 Mich at 603, 618; *Advocacy Org*, 257 Mich App at 384-385.

The trial court properly determined that Brown was not entitled to absolute or qualified governmental immunity and that the plaintiffs sufficiently alleged facts to support the elements of their fraud, tortious interference with business relations, and civil conspiracy claims against Brown. Therefore, the trial court properly denied Brown's motion for summary disposition under MCR 2.116(C)(7) and (8).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien