# Order

**Michigan Supreme Court**
**Lansing, Michigan**

February 7, 2020

158632

RESOURCE POINT, LLC,
        Plaintiff-Appellee,

v

ADDOLUX, LLC,
        Defendant,

and

MASOUD ABBASI,
        Defendant-Appellant.

_____/

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

SC: 158632
COA: 338338
Oakland CC: 2015-150580-CB

On order of the Court, the application for leave to appeal the September 20, 2018 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

ZAHRA, J. (*dissenting*).

I disagree with the Court's decision to deny defendant's application for leave. Because the Court of Appeals failed to defer to the trial court's assessment of witness credibility,[1] I would reverse in part the judgment of the Court of Appeals as to damages and remand this case to the Oakland Circuit Court for reinstatement of its damages award.[2]

Defendant contracted with plaintiff to provide Information Technology work for Gordon Food Service (GFS) from October 2012 through February 8, 2014 (referred to as the "first engagement"). The contract included a noncompete agreement that expired on August 8, 2015. Defendant violated the noncompete agreement by soliciting work from GFS. Specifically, in June 2015, plaintiff contacted GFS so as to arrange additional work for defendant, but it learned that defendant had already directly solicited and obtained employment at GFS (referred to as the "second engagement").

---

[1] See MCR 2.613(C) and *In re Miller*, 433 Mich 331, 337 (1989).

[2] I agree with and would leave intact the portion of the Court of Appeals' opinion that concludes the trial court erred by denying plaintiff's request for attorney fees as contemplated by the noncompete agreement as part of the damages award.

Plaintiff sued and, following a bench trial, the trial court found that defendant had breached the noncompete agreement and was liable to plaintiff for breach of contract. The more difficult issue was determining damages. The Court of Appeals provided this summary:

> During the first GFS engagement, GFS paid [plaintiff] $160 per hour of services; [plaintiff] in turn paid [defendant] $115 an hour, leaving [plaintiff] with a profit of $45 per hour. After six months, GFS increased the pay rate to $180 per hour. [Plaintiff] paid [defendant] $130 an hour, for a profit of $50 per hour. Under both pay rates, [plaintiff] retained 28% of the GFS payment. During the second GFS engagement, [defendant] worked for a different GFS department. Under this contract, GFS paid [defendant] $150 per hour. And from June 2015 through the time of trial, [defendant] had worked a total of 2,896 hours.[3]

The Court of Appeals also summarized the disagreement about damages related to defendant's work during the second GFS engagement:

> [Plaintiff] provided evidence that it bore some overhead from negotiating the first contract between GFS and [defendant], but asserted that with the initial work under its belt, these costs would not be duplicated in a second placement between GFS and [defendant] . . . . Accordingly, [plaintiff] asserted, its share of the payments during [defendant]'s second GFS engagement would have been "pure profit." Overall, [plaintiff] sought $180,800 in damages.[4]

The trial court "took judicial notice that [plaintiff]'s overall profit margin was 12.5% and determined to award [plaintiff] only 12.5% of the payments [plaintiff] would have retained during [defendant]'s second GFS engagement, a total of $22,600."[5] The trial court ruled that "this [c]ourt's measure of damages is the . . . profit margin that [plaintiff] would have made on [defendant]'s job starting on June 8th of . . . 2015 and continuing through the four months, through May 25th of 2017 . . . ."

The Court of Appeals vacated the $22,600 damages portion of the trial court judgment and instead remanded the case for entry of a judgment awarding plaintiff $147,588 in damages for lost profits. This is how the panel arrived at that figure:

---

[3] *Resource Point LLC v Addolux LLC*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 338338), p 2.

[4] *Id.*

[5] *Id.*

As noted, the parties' noncompete agreement provided that [defendant] was required "to indemnify and hold harmless" [plaintiff] "for any and all loss, costs, and other liability incurred or threatened" as a result of [defendant]'s breach. To calculate [plaintiff]'s loss, the circuit court was required to determine the value of [defendant]'s contract for the second GFS engagement. [Plaintiff] presented evidence that at the time of trial, [defendant] had worked 2,896 hours for GFS, for an average of 38.61 hours per week. Other uncontroverted evidence established that [defendant]'s work would continue for at least another four months, or 16 weeks, under the second GFS engagement. Multiplying 38.61 hours per week by 16 weeks amounts to an additional 617.76 hours. Rounding that number and adding it to the hours [defendant] had already worked amounts to a total of 3,514 hours. The second GFS engagement was therefore worth 3,514 hours of work.

The value of the hours then becomes critical to determining [plaintiff]'s lost profits. [Plaintiff] presented evidence that GFS paid $150 per hour under the second GFS engagement. Multiplying the total number of hours worked (3,514) by this hourly rate amounts to a total of $527,100—i.e., the total value of the second GFS engagement was $527,100.

[Plaintiff] would not have been entitled to the entire $527,100, as it would have been required to turn a portion of this amount over to [defendant] as his compensation. Accordingly, the trial court was next required to calculate how much of the total contract value would have flowed into [plaintiff]'s pockets. To arrive at this figure, it is appropriate to consider past dealings between the parties involved. As noted, the undisputed evidence shows that [plaintiff] retained 28% of GFS's payment during [defendant]'s first GFS engagement. The evidence of these previous dealings allowed [plaintiff] to prove its damages with reasonable certainty. *Health Call of Detroit* [*v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96 (2005)]. The proper measure of damages was 28% of the value

of the contract for the second GFS engagement; 28% of $527,100 amounts to a total of $147,588 in lost profits.[6]

In my view, the discrepancy between the trial court and the Court of Appeals is attributable to determination of overhead. Plaintiff maintained there would was no overhead and that the referral fee for the second GFS engagement would have been 100% profit. The trial court understandably found this contention dubious and expressly rejected the testimony that supported this contention. Specifically, the court found that Rita Mehta, plaintiff's vice president, was not credible. It is within the purview of the trier of fact to determine credibility, and great deference is given to the fact-finder on that issue. Having found Mehta not credible, the trial court calculated damages by applying plaintiff's 2015 profit margin to the gross income it claimed it would have received from the second GFS engagement. The use of the 12.5% profit margin properly accounted for the net profit loss. In my view, the trial court's methodology was proper and reasonable. The Court of Appeals improperly failed to defer to the trial court's assessment of witness credibility. I would reverse in part the judgment of the Court of Appeals as to damages and remand this case to the Oakland Circuit Court for reinstatement of its damages award.

MARKMAN, J., joins the statement of ZAHRA, J.

---

[6] *Resource Point LLC*, unpub op at 4.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

February 7, 2020



s0204

Clerk