*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY SCOTTO-DIVETTA,

      Plaintiff-Appellant/Cross-Appellee,

v

ANN KAWASKE,

      Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
June 12, 2025
12:12 PM

No. 366659
Wayne Circuit Court
LC No. 20-002384-CH

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

In 2019, plaintiff purchased a single-family home in Plymouth, Michigan, from defendant. Defendant's seller disclosure statement (SDS) did not disclose any water problems with the home or in the yard but Plaintiff experienced flooding in the backyard shortly after moving in. Plaintiff filed a complaint against defendant for these omissions, asserting claims of fraud by defendant in not disclosing the flooding issues. Following a bench trial, the trial court issued an opinion and order finding in favor of plaintiff on the fraud claims but denying plaintiff's motion to amend the judgment to include an award of attorney fees. Plaintiff appeals, arguing she is entitled to attorney's fees, and Defendant cross-appeals the underlying judgment as of right. For the reasons that follow, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant moved into the subject home in 2013. At trial, defendant testified that she never had any water problems in the yard during the time she lived there. Evidence established that a French drain was installed in the backyard in 2014 but defendant maintained that it was not for drainage issues, and the work she had done that year was aesthetic landscaping. Defendant's children and dogs played in the backyard without issue while living there. Defendant got married in April 2018, and the following summer, she and her children were primarily living at her husband's home. She would go back to check on the subject home periodically, but was not living there full-time. Defendant listed the home for sale in early 2019.

Plaintiff had looked at several houses in her search for a new home, and, in particular, wanted a fenced-in yard for her children and dogs. She visited the subject property in January

-1-

2019, and two more times before closing, but did not go into the backyard or notice any flooding issues because there was snow on the ground each time she visited.

Defendant executed the SDS on January 21, 2019, indicating:

Other Items: Are you aware of any of the following:

* * *

5. Settling, flooding, drainage, structural, or grading problems? Answer-**NO**

Defendant testified that she filled out the SDS based on the knowledge she had at the time she signed it. The parties executed a purchase agreement on February 2, 2019, for a purchase price of $395,000. The parties closed in early March 2019, and plaintiff took possession, but did not move in until July 2019, after she had remodeling work done.

Beginning in April 2019, plaintiff and her husband started to notice flooding or pooling in the backyard. There was deep mud, and it was too wet to mow the lawn. The problem would reoccur after any rain. Plaintiff and her husband purchased sump pumps to pump the water out. The backyard was only dry and usable from mid-June through the end of September during the years in which she resided in the home. Plaintiff and her husband noticed similar water problems in the backyards of the neighboring homes, but believed the problem was the worst at their property because it was at the lowest elevation in the neighborhood. Different neighbors testified about having similar issues of standing water in their backyards, and having noticed the problem in the subject backyard.

One neighbor stated that he had similar water pooling and flooding issues in his own backyard every spring. He had a sump pump to remove the water, and a berm extended for landscaping, which he testified did not change the water issues on his property. A neighbor two doors down testified that every year since 2014, he would have standing water after rain that came over a berm of woodchips piled around shrubbery. The neighbor who lived in the home behind the subject property since 1991 testified that he noticed pooling or flooding of water at the property line where his property meets the subject property every year.

Plaintiff and her husband obtained quotes from three different landscaping companies for solutions to fix the problem, and representatives from each company testified about the proposed solutions and estimated cost. However, plaintiff never had any of the proposed work performed at the subject property by any of the companies.

Plaintiff initially filed suit alleging three counts against defendant: fraudulent misrepresentation, breach of contract, and negligence. Defendant moved for summary disposition, which the trial court granted as to plaintiff's claims for breach of contract and negligence, but denied as to plaintiff's claim for fraudulent misrepresentation. The court also permitted plaintiff to amend her complaint to add counts of silent fraud and fraud in the inducement. Plaintiff requested the following relief: 1) compensatory damages to compensate her actual, incidental losses; (2) exemplary damages from defendant's intentional and malicious actions; and (3) interest, costs, and attorney fees.

This case proceeded to a five-day bench trial, beginning in July 2022. On the third day, at the end of plaintiff's case-in-chief, plaintiff moved for a directed verdict, and defendant moved for involuntary dismissal. The trial court denied both motions and the trial continued. After the defense rested and the parties submitted written closing arguments, the court entered an opinion and order. As to plaintiff's fraudulent-misrepresentation claim, the court concluded that defendant's representation that there was no flooding at the subject property was proven to be false, that defendant knew there was flooding or recklessly made the misrepresentation that there was no flooding when she signed the SDS, and defendant's failure to inform plaintiff and indicating otherwise on the SDS established defendant's intent for plaintiff to act upon her representation, which plaintiff did, and plaintiff suffered injury by having to remedy the flooding. The court found in favor of defendant on plaintiff's claim for fraud in the inducement because plaintiff failed to show that defendant made a false representation of some future fact. As to silent fraud, the court relied on the same evidence establishing that defendant knew the backyard retained water. Defendant's failure to tell plaintiff, and instead indicating on the SDS that there was no flooding, established defendant's intent for plaintiff to rely on the representation.

As to damages, the trial court concluded that plaintiff established that she was entitled to damages because she had proven fraudulent misrepresentation and silent fraud. The court awarded plaintiff $35,000 in damages, based on the fact that flooding only occurred during a limited period of time and affected only a portion of the backyard. The amount awarded was an attempt to reach a middle ground between the various backyard work estimates. However, the court did not award plaintiff attorney fees because plaintiff failed to cite a statute or court rule authorizing attorney fees.

Plaintiff moved to amend the judgment under MCR 2.611, arguing that she was entitled to attorney fees on the basis of the court's determination that defendant committed fraud or unlawful conduct. The trial court denied this motion. Defendant then moved for a new trial based on newly discovered evidence that plaintiff sold the property for a profit, and merely described the water issues in the backyard as "seasonal pooling/grading" on a new SDS. The court also denied this motion. Plaintiff now appeals the trial court's denial of her motion to amend the judgment, and defendant cross-appeals the underlying judgment in plaintiff's favor.

## II. ATTORNEY FEES

Plaintiff argues in her direct appeal that the trial court abused its discretion by failing to award her attorney fees and failing to amend the judgment to include an award of attorney fees because the court found that defendant committed fraud, which constitutes willful, wanton, or malicious conduct, and recovery of attorney fees is allowed where legal fees are incurred from a fraudulent act. We disagree.

This Court reviews a trial court's decision on an award of attorney fees for an abuse of discretion. *Powers v Brown*, 328 Mich App 617, 620; 939 NW2d 733 (2019). A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Id*. The trial court's decision to grant or deny a motion for attorney fees presents a mixed question of fact and law. *Johnson v USA Underwriters*, 328 Mich App 223, 247; 936 NW2d 834 (2019). "The trial court's findings of fact are reviewed for clear error, and questions of law are reviewed de novo." *Id*. A finding of fact is clearly erroneous when, "although there is evidence to support it,

the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012) (quotation marks and citation omitted). Questions of law related to damages, such as whether a particular type of damages are available for a cause of action, are reviewed de novo. See *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 242; 828 NW2d 660 (2013).

"Michigan follows the 'American rule' with respect to the payment of attorney fees and costs." *Haliw v Sterling Hts*, 471 Mich 700, 706; 691 NW2d 753 (2005). "Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Id*. at 707. "Exceptions to the prevailing doctrine that attorney fees are not recoverable must be narrowly construed." *Brooks v Rose*, 191 Mich App 565, 575; 478 NW2d 731 (1991).

Plaintiff does not cite a statute or court rule authorizing an award of attorney fees in her favor, but rather, argues that she is entitled to attorney fees based on the trial court's determination that defendant committed fraud. This Court, and the Michigan Supreme Court, have recognized that attorney fees are permissible in limited situations where a party incurs legal expenses from another party's fraudulent or unlawful conduct. See *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 407-409; 751 NW2d 443 (2008).

This Court has also recognized that there is a difference between attorney fees recoverable under a statute or court rule and attorney fees recoverable as a form of damages. See *Pransky v Falcon Group, Inc*, 311 Mich App 164, 194-195; 874 NW2d 367 (2015). In *Pransky*, this Court held that to recover attorney fees as a form of damages, the party seeking such damages must have brought a claim for those damages. *Id*. at 195.

In plaintiff's amended complaint, she requested the following relief: compensatory damages in excess of $25,000 to cover plaintiff's actual, consequential, and incidental losses; "exemplary damages as a result of [defendant's] intentional and malicious actions;" and "[i]nterest, costs, and reasonable attorney fees." Plaintiff did not specifically plead a claim for attorney fees based on fraud as she differentiated between exemplary damages and reasonable attorney fees in her request for relief. It was not until she moved to amend the judgment that she alleged that she was entitled to attorney fees based on the trial court's conclusion that defendant had committed fraudulent misrepresentation and silent fraud, made in the judgment entered after trial. Thus, plaintiff did not properly advance her claim for attorney fees based on fraud committed by defendants in her amended complaint, *id*. at 194-195, and the trial court did not abuse its discretion by denying plaintiff's request for same.

To the extent plaintiff's requested relief can be read as a request for attorney fees as exemplary relief for defendant's "intentional and malicious actions," her argument still fails. "The purpose of exemplary damages is to make the injured party whole." *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 630; 769 NW2d 911 (2009). "An award of exemplary damages is considered proper if it compensates a plaintiff for the humiliation, sense of outrage, and indignity resulting from injuries maliciously, willfully and wantonly inflicted by the defendant." *Id*. (quotation marks and citation omitted). Plaintiff does not assert, nor was there any evidence presented at trial, that plaintiff suffered any form of humiliation, outrage, or indignity from defendant's alleged failure to disclose flooding issues in the SDS before the sale of the subject

property. The only evidence at trial was plaintiff's testimony that she spent between $70,000 and $75,000 on this litigation; there was no evidence that defendant acted maliciously, willfully, or wantonly.

Lastly, defendant asserts that plaintiff should be sanctioned by this Court for bringing a vexatious appeal. MCR 7.216(C)(1) permits us to assess actual and punitive damages if we find an appeal was vexatious, meaning:

> (a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal; or

> (b) a pleading, motion, argument, brief, document, record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court.

We do not believe that plaintiff's appeal rises to the standard of vexation sufficient for the imposition of sanctions. There is no indication the appeal was taken for hindrance or delay or without reasonable basis of a meritorious issue. MCR 7.216(C)(1)(a). Nor is there any indication that anything filed in this case, or any testimony presented at trial by plaintiff, did not fairly present the issues to the court. MCR 7.216(C)(1)(b). Although plaintiff is not entitled to relief based on the merits of her appeal, i.e., an award of attorney fees, the direct appeal is not so vexatious as to require sanctions.

## III. NEW TRIAL

Defendant argues in her cross-appeal that a remand for a new trial is appropriate because newly discovered evidence revealed that plaintiff allowed evidence to spoil and undermines plaintiff's assertions of flooding in her backyard. We disagree.

Although labeled as a "motion for new trial," defendant's motion was actually filed under MCR 2.612, which governs relief from judgment. The trial court's denial of a motion for relief from judgment is reviewed for an abuse of discretion. *CD Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 421-422; 834 NW2d 878 (2013). The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Id*. at 422.

Defendant moved the trial court "for a new trial" under MCR 2.612(C)(1)(b), which provides for relief from judgment based on "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B)." MCR 2.611(B) requires that a motion for a new trial must be filed within 21 days after entry of the judgment, and defendant explains that the sale of the subject property occurred more than 21 days after the March 7, 2023 judgment was entered, and through due diligence, was not discovered by defendant until the end of 2023, forcing defendant to move under MCR 2.612(C)(1)(b). A party seeking relief from judgment based on newly discovered evidence must establish that (1) the evidence, not simply its materiality, is newly discovered; (2) the evidence is not merely cumulative; (3) the newly discovered evidence is likely to change the result; and (4) the party

-5-

moving for relief from judgment was not able to produce the evidence with reasonable diligence. *South Macomb Disposal Auth v American Ins Co*, 243 Mich App 647, 655; 625 NW2d 40 (2000).

The trial in this matter ended on October 17, 2022. The court issued its judgment on March 7, 2023. Plaintiff moved to amend the judgment on March 28, 2023, which the court denied on June 15, 2023. One of the pieces of evidence that defendant asserts entitles her to a remand for a new trial is the SDS plaintiff executed when selling the subject property. It was signed by plaintiff on March 20, 2023. Under "Other Items: Are you aware of any of the following," for No. 5, "Settling, flooding, drainage, structural or grading problems," plaintiff check-marked "Yes." By way of further explanation, plaintiff wrote "[b]ackyard—seasonal pooling/grading." The second piece of new evidence that defendant asserts entitles her to a remand is a screenshot from Zillow.com, indicating the subject property was sold on April 28, 2023, for $540,000.

Regarding the four elements required for relief from judgment based on newly discovered evidence, *South Macomb Disposal Auth*, 243 Mich App at 655, defendant asserts that this evidence was newly discovered and defendant could not have produced it before trial with due diligence as the subject property was sold and plaintiff executed the new SDS after the trial ended and judgment was entered. However,

> [g]enerally speaking, the request for new trial must be grounded upon the recent discovery of evidence of an asserted thing or event—i.e., a proposed fact—that existed or took place *prior* to the conclusion of the trial. Things or events that came into existence or took place *after* trial do not generally qualify as grounds for a new trial because they could not have been the subject of testimony at trial. [*People v Rogers*, 335 Mich App 172, 195; 966 NW2d 181 (2020).]

See also *Bishop v Gaudio*, 266 Mich 267, 270; 253 NW 292 (1934) (holding that findings from a medical examination that was conducted after trial did not constitute newly discovered evidence). Thus, defendant would not be entitled to relief from judgment or a new trial as the evidence of plaintiff's sale of the property, which took place after trial, does not constitute "newly discovered evidence."

And even if it was newly discovered evidence, plaintiff's sale of the home and disclosures on the SDS have no relevance to the sale of the home from defendant to plaintiff and whether fraudulent misrepresentation or silent fraud were committed in that transaction. And, plaintiff disclosed the flooding problems in the backyard on the new SDS. The trial court did not abuse its discretion by denying defendant's motion for relief from judgment or a new trial, and defendant is not entitled to a remand for a new trial based on this evidence.

## IV. DAMAGES

Defendant next argues that the trial court's award of $35,000 in damages to plaintiff was in error because that amount was not supported by the evidence. We disagree.

"This Court reviews for clear error the trial court's factual findings following a bench trial and reviews de novo the trial court's conclusions of law." *Patel v Patel*, 324 Mich App 631, 633; 922 NW2d 647 (2018). "As with other findings of fact, an award of damages is reviewed on appeal

pursuant to the clearly erroneous standard." *Jackson v Bulk AG Innovations, LLC*, 342 Mich App 19, 24; 993 NW2d 11 (2022) (quotation marks and citation omitted). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Brown*, 298 Mich App at 690. "On appellate review, this Court must afford deference to the trial court's superior ability to judge the credibility of the witnesses who appear before it." *Patel*, 324 Mich App at 633.

"In a fraud and misrepresentation action, the tortfeasor is liable for injuries resulting from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated." *Barclae v Zarb*, 300 Mich App 455, 479; 834 NW2d 100 (2013) (quotation marks and citation omitted). This Court has approved the use of repair or replacement costs as a measure of damages in the context of misrepresentations related to the sale of realty. *Clemens v Lesnek (After Remand)*, 219 Mich App 245, 246, 250; 556 NW2d 183 (1996). Thus, replacement or repair costs can be used to value the damages caused by the seller's failure to convey the property as represented. Here, the trial court awarded plaintiff damages on the basis of estimated costs to repair the flooding problem on the subject property. This was proper. See *id*. at 250.

Plaintiff had the burden of proving the amount of damages with reasonable certainty. *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005). "The general rule is that remote, contingent, and speculative damages cannot be recovered in Michigan in a tort action." *Id*. However, damages "are not speculative simply because they cannot be ascertained with mathematical precision. Although the result may only be an approximation, it is sufficient if a reasonable basis for computation exists." *Id*. (citations omitted). Here, the testimony of the various contractors who provided quotes established, with reasonable certainty, that the flooding and pooling issues could be addressed, and provided estimates for the costs to complete the work. Plaintiff is entitled to damages representing the difference between the cost for a house with flooding problems and one without flooding problems, and under *Clemons v Lesnek*, 219 Mich App 245, 247-248; 556 NW2d 183 (1996), one measure of such damages is the cost to repair the problem.

The emphasis of defendant's argument on appeal is that the $35,000 amount of damages was clearly erroneous. The trial court explained its reasoning in reaching this amount as follows:

> In the Court's view, the flooding only occurred during a limited period of time during the year and the affected area is only a portion of the backyard. Plaintiff paid $395,500.00 for the property when she purchased it. The affected area reflects only a small portion of the overall property. Plaintiff is able to utilize the majority of the property including the home itself. Nevertheless, she is still entitled to damages. A reasonable amount for damages to the affected area is a compromise between the two parties' estimates. The Court believes that $35,000.00 is a fair and reasonable amount in damages.

The evidence at trial established that plaintiff and her husband obtained quotes from three landscaping companies to address the problem—Todd's Landscaping, Reliable Landscaping, and Black Pearl Landscaping. The proposal from Todd's totaled $15,893.33. The quote from Reliable totaled $11,250. The Black Pearl quote was for around $50,000. Defendant asserts that the Black

Pearl quote was unreliable because of a lack of credibility of Todd LaCosse, a representative of Black Pearl, as a witness and inconsistencies in his testimony. However, Douglas Nylander, a civil engineer, opined that the proposals by Todd's and Reliable, recommending a French drain or bioswale, would not suffice, and found the proposal by Black Pearl reasonable in cost; whereas defendant's expert, Adam Olshove, believed either quote by Todd's or Reliable was sufficient to resolve any issue on the property, and opined that the Black Pearl quote was an "exaggerated solution." Regardless, we give deference to the trial court's judgment of witness credibility, *Patel*, 324 Mich App at 633, and there was nothing in LaCosse's testimony that seriously undermined the amount of the proposal. Although defendant argues that it covered the entire backyard rather than the one area where the flooding occurred, the court did not award damages in the full amount of the $50,000 proposal.

Based on this evidence, the trial court did not clearly err in awarding plaintiff $35,000 in actual damages. It was permitted to use repair costs as a measure of damages in the context of misrepresentations related to the sale of real property, *Clemens*, 219 Mich App at 246-247, and the testimony of the contractors provided a range within which to reach this number. The $35,000 amount was within this range. The trial court did not have to reach a number with mathematical precision, and its approximation was sufficient because a reasonable basis for the final amount existed. *Health Call of Detroit*, 268 Mich App at 96. Therefore, the trial court did not clearly err in its $35,000 award of damages to plaintiff.

## V. FRAUD CLAIMS

Defendant also argues that the trial court clearly erred in finding that the elements of fraudulent misrepresentation and silent fraud were met, and that the trial court applied the wrong standard in reaching this conclusion. We disagree.

An issue is preserved for appeal if it is raised in or addressed by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). In the judgment entered after trial, the court found in favor of plaintiff on her claims of fraudulent misrepresentation and silent fraud. Thus, the merits of the trial court's decision on these issues is preserved. The same standard of review provided earlier in this opinion for findings of fact and conclusions of law made after a bench trial apply to the preserved portion of this issue.

However, defendant did not assert in the trial court that the trial court improperly weighed the evidence under the more lenient standard of preponderance of the evidence than the clear and convincing standard when issuing its opinion and order. She did not raise this argument in her motion for a new trial, i.e., for relief from judgment. Michigan follows the "raise or waive" rule for appellate issues, meaning, litigants must preserve an issue for it to be reviewed on appeal, and to preserve an issue, "the party asserting error must demonstrate that the issue was raised in the trial court" and "show that the same basis for the error claimed on appeal was brought to the trial court's attention." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Although we may overlook preservation requirements "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented," *id*. at 289-290 (quotation marks and citations omitted), in this instance, we deem this aspect of defendant's argument waived.

Plaintiff's claims arise out of statements or omissions in defendant's SDS, which is governed by the Michigan Seller Disclosure Act, MCL 565.951 *et seq*. "The transferor of any real property described in [MCL 565.952] shall deliver to the transferor's agent or to the prospective transferee or the transferee's agent the written statement required by this act." MCL 565.954(1). However, "[t]he transferor or his or her agent is not liable for any error, inaccuracy, or omission in any information delivered pursuant to this act if the error, inaccuracy, or omission was not within the personal knowledge of the transferor . . . ." MCL 565.955(1). Thus, liability is precluded for errors, inaccuracies, or omissions in an SDS that existed when the SDS was delivered, where the seller lacked personal knowledge and would not have had personal knowledge by the exercise of ordinary care. *Bergen v Baker*, 264 Mich App 376, 385; 691 NW2d 770 (2004). These provisions were applicable to defendant's sale of the subject property to plaintiff.

To establish a claim of fraudulent misrepresentation, the plaintiff must establish:

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Mercurio v Huntington Nat'l Bank*, 347 Mich App 662, 681; 16 NW3d 748 (2023) (quotation marks and citation omitted).]

Each element must be proven with a reasonable degree of certainty, and all must be found to exist to succeed; the absence of one element is fatal to recovery. *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). Questions concerning the state of one's mind, including intent, motivation, or knowledge, can be proven by circumstantial evidence. *Bergen*, 264 Mich App at 387. A party's reliance on a misrepresentation in a fraud action must be reasonable. *Id*. at 389. In general, "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976).

In this matter, the evidence—in particular, the circumstantial evidence—was sufficient to establish plaintiff's claim for fraudulent misrepresentation. Defendant made a material representation on the SDS by indicating she had no knowledge of any flooding or pooling problems on the property. The circumstantial evidence admitted at trial establishes that this was false. Several neighbors testified about water issues in the yard of the subject property and the surrounding yards; the photograph taken by one neighbor, Timothy Dawso, established flooding or pooling in the yard when defendant owned the property in 2018; and the work performed by Reliable Landscaping in 2014, included a French drain. Dennis Vukovich, the owner of the property directly behind the subject property, testified that after defendant had this work done in 2014, the water moved down toward his property and "disappeared," but came back and got bigger after plaintiff moved in.

Defendant is correct that there is no direct evidence establishing the third and fourth elements of fraudulent misrepresentation, but the same circumstantial evidence, and the reasonable inferences arising therefrom, also establishes that defendant knew her statement on the SDS was false at the time she made it or made it recklessly without knowledge of its truth, and she intended

that plaintiff rely on it. See *Mercurio*, 347 Mich App at 681. Although defendant testified that she did not know plaintiff, and therefore did not intend for plaintiff to rely on it, defendant intended to sell the property, and filled out the SDS in furtherance of that goal. Plaintiff testified that she relied on this statement in the SDS, as it was her intent to find a home with a fenced-in backyard for her dogs and children to use, and at the time she purchased the property, it was winter and the backyard was covered in snow, so she could not have observed any of these water problems. Plaintiff suffered damage, as she testified that she was unable to use the entirety of her backyard for several months out of the year. Thus, the elements of fraudulent misrepresentation were met, and the court did not clearly err by entering judgment in plaintiff's favor on this claim.

Next, defendant challenges the trial court's decision that she committed silent fraud, which is also known as fraudulent concealment. *Id*. at 674 n 5. Under this doctrine, a cause of action can be maintained when there is a suppression of material facts, along with a legal or equitable duty to disclose those facts. *Id*. at 681. The plaintiff must prove that "the defendant knew of a material fact but concealed or suppressed the truth through false or misleading statements or actions with the intent to deceive." *Id*. (quotation marks and citation omitted). The misrepresentation need not be words alone, but can also be shown where a party intentionally suppresses material facts to create a false impression to the other party. *Id*. at 681-682. The legal or equitable duty to disclose is key, and the threshold question whether such a duty exists is an issue for the court to decide. *Id*. at 682.

As discussed above, the disclosure provisions of the Seller Disclosure Act applied to defendant's sale of the property to plaintiff, establishing defendant's legal duty to disclose for purposes of silent fraud. MCL 565.952. Through the circumstantial evidence, it was established that defendant knew of a material fact, i.e., the water problems in the backyard. Defendant concealed or suppressed the truth by indicating on the SDS the false statement that there were no flooding or water problems on the property. The circumstantial evidence and reasonable inferences arising therefrom establish that by including a false statement on the SDS, defendant intended to deceive plaintiff as to the true nature of the subject property. Thus, the elements of silent fraud were also met.

## VI. INVOLUNTARY DISMISSAL

Defendant argues that the trial court improperly treated her motion for involuntary dismissal as a motion for directed verdict, and had the court applied the proper standard, her motion would have been granted. Although the court applied the wrong standard, this error was harmless, and defendant is not entitled to relief.

As noted earlier in this opinion, an issue must be raised in or addressed by the trial court to be preserved for appeal. *Glasker-Davis*, 333 Mich App at 227. Defendant moved for involuntary dismissal of plaintiff's claims after plaintiff rested and moved for a directed verdict of no cause of action. The court took both motions under advisement, and ruled on both motions when trial resumed on the fourth day. The trial court incorrectly referred to defendant's motion for involuntary dismissal as a motion for directed verdict, and concluded that based on the evidence presented by plaintiff, questions of fact existed, and denied the motion. Despite using the wrong standard, the trial court sufficiently addressed defendant's motion, thereby the merits of its decision are preserved for appeal. However, defendant challenges the use of the wrong standard

for the first time on appeal. As such, this part of defendant's argument is not preserved, but we choose to overlook the preservation requirements for the reasons stated in *Tolas*, 347 Mich App at 289-290, and address this aspect of defendant's argument herein.

"When a trial court, sitting as the finder of fact, is asked to direct a verdict, the motion is actually one for involuntary dismissal." *2 Crooked Creek, LLC v Cass Co Treasurer*, 329 Mich App 22, 42; 941 NW2d 88 (2019), aff'd but criticized on other grounds 507 Mich 1 (2021). Even when the parties or lower court erroneously categorizes a motion at a bench trial as one for directed verdict, we will review it as one for involuntary dismissal. *Id.*; see also *Armoudlian v Zadeh*, 116 Mich App 659, 671; 323 NW2d 502 (1982) (reviewing an order granting directed verdict as one granting involuntary dismissal where a bench trial was held). Motions for involuntary dismissal test the factual support for a claim. *Williamstown Twp v Hudson*, 311 Mich App 276, 287; 874 NW2d 419 (2015). "[A] motion for involuntary dismissal calls upon the trial judge to exercise his function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences. Plaintiff is not given the advantage of the most favorable interpretation of the evidence." *Id.* (quotation marks and citations omitted). A trial court's denial of a motion for involuntary dismissal is reviewed de novo, with its findings of fact reviewed for clear error. *Id.* at 289. "A trial court's findings are considered clearly erroneous where we are left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

MCR 2.504(B)(2), governing involuntary dismissals, provides:

(2) In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that on the facts and the law, the plaintiff has no right to relief. The court may then determine the facts and render judgment against the plaintiff, or may decline to render judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in MCR 2.517.

As noted, when a bench trial is held, the appropriate motion is a motion for involuntary dismissal under MCR 2.504(B), rather than a motion for directed verdict under MCR 2.596. *2 Crooked Creek, LLC*, 329 Mich App at 42. And where a trial court's opinion does not invoke the proper court rule to support its ruling, we may look to the substance of the holding to determine which rule governs. See *Williamstown Twp*, 311 Mich App at 288.

After plaintiff rested her case on the third day of trial, plaintiff moved for directed verdict, and defense counsel indicated she would respond as well as argue her own motion for involuntary dismissal, which may have led to the trial court's confusion. The court took the motions under advisement, and when trial resumed, the court denied plaintiff's motion for a directed verdict, on the basis that defendant had not yet presented her case, without mentioning that plaintiff's motion for a directed verdict was actually improper in a bench trial. Then the trial court incorrectly referred to defendant's motion as a "motion for directed verdict," and incorrectly stated the standard for a motion for directed verdict—that the court must view the evidence and all inferences arising therefrom in the light most favorable to plaintiff. Although this was in error, it was

-11-

harmless. See *Willoughby v Lehrbass*, 150 Mich App 319, 329-330; 388 NW2d 688 (1986) (error in granting motion for involuntary dismissal deemed harmless where the verdict would have been the same regardless of assumed error).

In denying defendant's motion, the trial court summarized all of the evidence of plaintiff's case-in-chief, including her testimony that she wanted a fenced-in yard, that shortly after purchasing the property she experienced flooding rendering half the yard unusable for 10 months of the year, and that had she known of the flooding, she would not have made the purchase. The court noted the testimony of several neighbors indicating the history of water problems in the subdivision, including testimony from neighbors who had been residents there for 35 to 50 years. The court noted Dawso's 2018 picture of standing water in the backyard of the subject property, and the testimony of Nylander, indicating the property was at the lowest point among the surrounding houses and that the flooding issue had to have happened over a long period of time. Lastly, the court noted the testimony of LaCosse, indicating any remediation efforts would be a difficult job and it would have taken several years for the yard to get to the condition it was in during plaintiff's ownership. Based on this evidence and the admitted exhibits, the court concluded there remained questions of fact sufficient to deny defendant's motion.

Although the court used the improper standard to deny defendant's motion, the trial court reached the right result. The evidence did not establish that plaintiff "ha[d] no right to relief" based on the facts and the law, MCR 2.504(B)(2), on her claims for fraudulent misrepresentation and silent fraud. Thus, the trial court's factual findings were not clearly erroneous, and the denial of defendant's motion was proper. See *Bronson Health Care Group, Inc v State Auto Prop and Cas Ins Co*, 330 Mich App 338, 342 n 3; 948 NW2d 115 (2019) (this Court "may affirm the trial court when it reached the right result, even if we differ on the reasoning underlying that result."); *Shields v Grandstaff*, 161 Mich App 175, 179; 410 NW2d 308 (1987) ("Although the trial court's ruling was somewhat . . . confusing, the substance of the holding was correct."), aff'd sub nom *Shields v Reddo*, 432 Mich 761 (1989). As such, the trial court's use of the wrong standard and treating defendant's motion for involuntary dismissal as one for directed verdict was harmless error, and the court ultimately reached the right conclusion.

## VII. PHOTOGRAPHIC EVIDENCE

Lastly, defendant argues that the trial court abused its discretion by admitting photographs taken by plaintiff and Dawso at trial that were not properly authenticated under MRE 901. We disagree.

"When an evidentiary issue is preserved, a trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018) (quotation marks and citation omitted). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes, but a court also necessarily abuses its discretion by admitting evidence that is inadmissible as a matter of law." *Id.* (quotation marks and citation omitted). "An error in the admission or exclusion of evidence . . . is not ground[s] for . . . granting a new trial, . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A).

At the time of trial in 2022, the version of MRE 901 in effect provided, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). An example of evidence that satisfies this requirement is "*Testimony of Witness with Knowledge*. Testimony that a matter is what it is claimed to be." MRE 901(b)(1).[1] A challenge to the authenticity of evidence involves a two-part inquiry:

> The first question is whether the evidence has been *authenticated*—whether there is sufficient reason to believe that the evidence is what its proponent claims for purposes of admission into evidence. The second question is whether the evidence is *actually authentic* or *genuine*—whether the evidence is, in fact, what its proponent claims for purposes of evidentiary weight and reliability. [*Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 154; 908 NW2d 319 (2017).]

The trial court determines whether evidence is admissible, with a threshold question being whether the evidence can be authenticated. *Id*. at 154-155. Under MRE 901(a), the party seeking admission must provide evidence supporting the conclusion that the evidence is what the proponent claims it is. *Id*. at 155. Evidence offered to authenticate may be direct or circumstantial, and "need not be free of all doubt." *Id*. Rather, MRE 901(a) requires a prima facie showing that a reasonable fact-finder could determine that the proffered evidence is what the proponent claims. *Mitchell*, 321 Mich App at 155. When the prima facie showing is met, the evidence is authenticated and can be presented to the fact-finder. It is up to the fact-finder to determine the weight and credibility of the admitted evidence. *Id*.

There was, indeed, confusion surrounding plaintiff's testimony and the admission of the photographs she took of the subject property at trial; however, the trial court did not abuse its discretion by admitting the photographs based on any failure to authenticate. Plaintiff's photographs of the property were admitted at trial as Exhibits 3(A) through (N). Plaintiff initially testified that some of the pictures were taken in the spring of 2019, demonstrating the standing water, but she could not give an exact date because they were not timestamped on her iPhone. When shown Exhibit 3(E), plaintiff testified the picture must have been taken a year later, in April 2020, after she and her husband had purchased sump pumps. She testified that some of the other pictures were also taken in April 2020. Next, she testified about a picture being taken in October 2019, showing standing water, as well as a photograph from January 2020, showing standing water even when there was snow. Then she identified another photograph as being from May 2020, demonstrating the continuing nature of the problem. She testified that several photos from October 2020, included a willow tree in the backyard with flooding around it, and that the tree was

---

[1] MRE 901 was amended, effective January 1, 2024. MRE 901(a) now provides, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what its proponent claims it is." The language of MRE 901(b)(1) now provides "*Testimony of Witness with Knowledge*. Testimony that an item is what it is claimed to be."

ultimately removed. When testifying about Exhibit 3(N), plaintiff said it was probably taken in May or June of 2020, but it could have been 2019.

Defense counsel objected to the speculative nature of the timing of the photographs, which the court overruled, and the court admitted all of the photographs into evidence. On cross-examination, plaintiff testified that she took all of the photographs before filing the lawsuit, but after filing, she transferred the photographs to a drive to make space on her phone. The court then recessed for her to see whether the dates of the photographs were still available. After looking through her phone, plaintiff was able to find the photographs she took in 2020, but not 2019. Defense counsel then moved to strike the photographs that plaintiff could no longer provide the date and time for, asserting that defendant had asked for all of the metadata during discovery and was not provided with it. The court denied the motion, reasoning that plaintiff testified she took the photographs, and the court had a "general idea" of when they were taken. Defense counsel went through each photograph with plaintiff on cross-examination to clarify the proper dates.

The trial court did not abuse its discretion in admitting plaintiff's photographs because they were sufficiently authenticated. Plaintiff testified that she took the photographs of the subject property before she filed the lawsuit. After looking through her phone, she was able to confirm the date of the photographs as being taken in 2020. The photographs depicted flooding or standing water in the backyard at different times during plaintiff's ownership of the property. Thus, she was a witness with knowledge of the photographs and provided testimony that the photographs were what plaintiff claimed them to be, MRE 901(b)(1), and this evidence was sufficient to support the two-part authentication inquiry. See *Mitchell*, 321 Mich App at 155 ("Our evidentiary rules do not require the proponent to sustain this burden in any particular fashion."). It was up to the trial court, as the fact-finder in this bench trial, to determine the weight and credibility of this evidence for plaintiff's fraud claims, which we shall not disturb. *Id*. But in its admission of the photographs, there was no abuse of discretion by the trial court.

As to the photograph taken by Dawso, he testified that he had previously signed an affidavit attesting to the validity of a photograph he took of the subject property's backyard in December 2018, with standing water. Defense counsel objected to admission of the photograph because the date was not confirmed, and counsel had been told that Dawso had deleted the photograph. Dawso testified that he had taken the photograph on an old phone, but had pulled the picture from a text message so it did include its metadata. Dawso testified that the date and time from this picture on his phone was December 31, 2018, at 3:42 p.m. Dawso had texted this photograph to plaintiff's husband on March 20, 2020, saying, "[s]aw someone taking pics. Not sure it helps but I took this pic of the lawn in December 2018." Defense counsel objected to admission of the photograph, arguing that she had tried to get the date and time of the photograph through discovery, had filed motions to compel and for sanctions, and never received the information. The court admitted the photograph, reasoning that it was clear through discovery that the picture was taken sometime in December 2018, and Dawso now provided the exact date and time within the December 2018 timeframe, so there was no prejudice to defendant.

The trial court did not abuse its discretion in admitting Dawso's photograph because it was properly authenticated. Defendant was aware during discovery that the photograph was taken sometime in December 2018, by the affidavit Dawso had signed. Dawso testified that he took the photograph, MRE 901(b)(1), and authenticated it through the metadata on his phone of its date and

time.  Thus, the two-part authentication test was met, as this evidence established that the photograph was what plaintiff proposed it was, and it was genuine, given the electronic date and timestamp.  *Mitchell*, 321 Mich App at 154.  Therefore, its admission was proper and defendant is not entitled to relief.

Affirmed.

/s/ Christopher P. Yates
/s/ Adrienne N. Young
/s/ Randy J. Wallace